THE PEOPLE *ex rel.* The Erie Railway Company *vs.*
BEARDSLEY and others, assessors of the town of Car-
rolton.

52  105
75h 400

Where a railroad company, under the permission given by the act of the legis-
   lature of 1836, chapter 316, contracts with the chiefs of a nation of Indians,
   for the right to construct its road upon the land of such Indians; the con-
   tract giving the company the right to make and use its road upon such land,
   without any limitation of time as to the enjoyment of the right; although
   the fee of the land is not vested in the company—that being prohibited by
   the statute—yet such land is "owned" by the company, within the contem-
   plation of the section of the Revised Statutes touching taxation, (1 *R. S.*
   387, § 1,) and is liable to be assessed as property occupied by the company,
   as a railroad, in the town in which it is situated.
All real estate owned, possessed or appropriated for use by railroad companies
   is to be assessed.
It was not intended, by the act "to relieve the Seneca nation of Indians from
   certain taxes on the Allegany and Cattaraugus reservation," passed Febru-
   ary 19, 1857, to affect any of the provisions of the general law respecting the
   property liable to taxation.
The tax is not to be assessed or imposed on the reservations, or any part of
   them, for any purpose, so long as the reservations remain the property of the
   Seneca nation.  But when the Indians enter into a contract with a railroad
   company, by which they give the latter the right to construct its road upon
   their land, and the road has been constructed thereon, and is used and occu-
   pied by the company, it ceases to be the property of the Seneca nation, to
   the extent specified in the contract.  Although the fee of the land does not
   pass to the company, the possession and use, and the right to possess and
   use, pass by such contract.

CERTIORARI.  The railway of the relator is constructed
   six miles in the town of Carrolton, in the county of
Cattaraugus, upon the lands of the Seneca nation of In-
dians, known as the Allegany reservation, under a con-
tract made by the relator with the Seneca nation of Indians,
dated June 28, 1850, giving to the relator the right to
make and use the railroad upon such lands.  The asses-
sors of the town of Carrolton, between May 1 and July 1,
1868, made up, decided upon and determined the assess-
ment, for their town, of all real and personal property
therein, for the year 1868.  They determined that the
relator occupied certain lands in the town, as a railroad,

six miles in length, and with the buildings and superstructure, the same was of the value of $76,000, and they entered the same upon their roll as an assessment against the relator upon its railway, with buildings and super-stucture. On the day appointed for the review and correction of the assessment roll, the relator, by its agent, appeared before the assessors and protested against the assessment of the lands, because the same were situated on the Allegany Indian reservation, and owned by the Seneca nation of Indians; and demanded that such assessment should be corrected and stricken off the roll. The assessors refused to comply with this demand, and they completed the roll and had it ready to be delivered to the supervisor of the town, at the time the writ of certiorari was served upon them.

*H. Gray*, for the relator.

*A. G. Rice*, for the assessors.

*By the Court*, MARVIN, J. The relator acquired its rights and title of the Seneca nation of Indians under and in pursuance of the act of 1836, chapter 316, by which it was made lawful for any company that had been or should thereafter be chartered, to contract with the chiefs of any nation of Indians, over whose land it might be necessary to construct a railroad, for the right to make such road upon such lands; but no such contract should " vest in any railroad company a fee in such lands."

By the Revised Statutes, all lands and all personal estate within this state, whether owned by individuals or by corporations, are made liable to taxation, subject to certain exemptions specified. (1 *R. S.* 387, § 1.) It is declared that the term land shall be construed to include the land itself and buildings and other articles erected upon or affixed to the same, all trees, &c.

The People *v.* Beardsley. ·

No tax can be imposed or assessed on any of the Indian reservations belonging to the Seneca nation of Indians. (*Sess. Laws*, 1857, *p.* 72, § 4.) This was so, independent of the statute. (*Fellows* v. *Denniston*, 23 *N. Y. Rep.* 420. *See also Wadsworth* v. *Buffalo Hydraulic Association*, 15 *Barb.* 83.)

The relator claims that the land assessed is a part of the Allegany Indian reservation, and that it remains the property of the Seneca nation, within the meaning of the act of 1857. The assessors claim that the land assessed is owned by the relator, within the contemplation of the Revised Statutes, (*supra*,) and that there is no valid reason why it is not to be taxed as the property of the relator.

In my opinion the position of the assessors is sound. I think the land assessed is "owned" by the relator, within the contemplation of the Revised Statutes, touching taxation. The fee of the land is not vested in the relator. This the statute of 1836 prohibits; and it is probable that the legislature could not have authorized the relator to acquire an absolute fee—certainly not without compensation to the *pre-emptive* proprietors of the lands, the Seneca nation of Indians. As to the title of the Indians and the rights of the pre-emptors, and the jurisdiction of the state over the Indian reservations, see *Wadsworth* v. *The Buffalo Hydraulic Association*, (*supra*.) The statute of 1836 authorizes railroad companies to contract with the Indians "for the right to make such road upon such lands," the Indian reservations. The enjoyment of the right is not limited by the statute. It must depend upon the contract. In the present case there is no limitation of time, in the contract. It is provided, however, that the contract shall not vest in the railroad company the fee of the lands described, nor the right to occupy the same for any purposes other than what may be necessary for the construction, occupancy and maintenance of such railroad. This view is strengthened by a reference to the Session Laws of 1857, chapter

536, amending the Revised Statutes. It is made the duty of railroad corporations to deliver to the assessors in the town or ward into which any part of their road shall run, or in which they *own* or are in *possession* of, any real estate, a classified list of all real estate *owned* or in *possession* of, the company in the town or ward, specifying the whole number of acres of land owned, *possessed* or appropriated for their use, with a valuation. The assessors, in fixing the value, are to take the valuation of the company as *prima facie* evidence of the value thereof. These statutory provisions clearly show that all real estate owned, possessed or appropriated for use by railroad companies is to be assessed. It was not intended, by the "act to relieve the Seneca nation of Indians from certain taxes on the Allegany and Cattaraugus reservations," passed February 19, 1857, to affect any of the provisions of the general law herein referred to. The tax is not to be assessed or imposed on the reservations or any part of them, for any purpose, so long as the reservations remain the property of the Seneca nation. The land possessed and used by the relator has ceased to be the property of the Seneca nation, to the extent specified in the contract with the relator. The fee of the land has not passed to the relator, but the possession and use, and the right to possess and use.

I think the assessors have not erred, and that the proceedings should be affirmed, with costs.

[ERIE GENERAL TERM, November 16, 1868. *Daniels, Marvin* and *Barker*, Justices.]