THE PEOPLE ex rel. THE DUNKIRK AND FREDONIA RAILROAD COMPANY *v*. JOHN I. CASSITY and others, Assessors of the Town of Dunkirk.

(GENERAL TERM, EIGHTH DISTRICT, FEBRUARY, 1870.)

A horse railway, constructed along and upon the grade of a highway, by laying rails of the ordinary dimensions upon pine stringers, fastened together with similar ties, together with the right (acquired partly by grant from adjoining owners, and partly by proceedings under the general railroad law), qualified by the public easement, to maintain and operate the road thereon, owned by a company chartered for fifty years, is assessable as real estate.

THIS cause was brought before this court by virtue of a common law certiorari, issued to the assessors of the town of Dunkirk. It appeared from the return made to the writ, that the relator was a railroad corporation, organized under and in pursuance of chapter 265 of the Laws of 1864, as amended by chapter 34 of the Laws of 1866, for the purpose of constructing and operating a horse railroad through and upon

certain streets and highways of the village and town of Dunkirk, and of the town of Pomfret and village of Fredonia, from the depot of the Erie Railway Company, in the village of Dunkirk, to a point at or near the Johnson House, in the village of Fredonia. That the company completed its organization, and filed its articles of association in the office of the secretary of State, in the month of December, 1865, and it afterward constructed its railroad track through and upon certain streets and highways mentioned and described in the return, between the points before mentioned. For the distance of about two miles and a half this road was constructed in the bounds of the village and town of Dunkirk. The railroad was constructed on the grade of the streets and highways used for that purpose, in a good, substantial manner, with pine ties and stringers, with wrought iron rails one inch in thickness by two and a half inches in width. The tracks of the railroad were located wholly within public streets and highways, and not less than six feet from the center thereof. The relator never had the exclusive use of the part of the streets and highways in and on which the tracks of the railroad were laid; but such parts had been used, occupied and traveled by the public in common with the relator, except when the cars ran on the tracks, and then precedence was claimed and exercised by the relator. The respondents assessed the relator on account of this railroad, as the owner of real estate in the town of Dunkirk, and liable to taxation for the same. The relator appeared before the respondents and objected to the assessment as illegal, but the objection was overruled, and the assessment confirmed. The relator thereupon sued out the present writ for the purpose of reviewing the action and decision of the respondents.

*William A. Barden*, for relator.

*F. S. Edwards*, for respondents.

Present—MARVIN, E. D. SMITH and DANIELS, JJ.

By the Court—DANIELS, J.  Before the railroad was con-
structed upon the streets and highways over which it passes,
the relator, by voluntary grants from the owners of the fee in
the soil, acquired the right of way for it, for the purpose of
building, laying down, constructing and operating its rail-
road.  These were the terms used in the grants for the pur-
pose of designating and describing the interest which the
relator acquired in the land required to be appropriated to
the use of the railroad.  And they were taken from all the
adjacent land owners, whose lands were bounded by the
streets and highways made use of, with one single exception,
and in that, the interest required by the relator in the land
was taken under the proceedings provided for by the general
railroad law, which in that and other respects, was rendered
applicable to this corporation.  The relator was authorized
and empowered to construct and maintain a railroad through
the streets and highways made use of, for a period not exceed-
ing fifty years.  (Laws of 1864, 626, § 4.)  And the interest,
acquired by means of the grants and proceedings taken, were
therefore commensurate with the extent and duration of that
privilege.  This interest, although an easement, qualified by,
and to some extent subject to, the more general one existing
in favor of the public over the same streets and highways,
was still an interest as well as an important one in the land
itself, beyond that previously secured to the public.  (*Wil-
liams* v. *N. Y. Central R. R. Co.*, 16 N. Y., 97; *Mahan* v.
*Same*, 24 id., 658, 661; *Craig* v. *Rochester City and B. R.
R. Co.*, 39 N. Y., 404.)  It conferred upon the relator not
only the right of passing over the streets and highways, but
the additional right of appropriating so much of them as
was conveniently required for the purpose, to the permanent
support of the superstructure required for their use.  While
this did not necessarily exclude the traveling public from the
use of that portion of the streets and highways, it did none
the less on that account amount to an actual appropriation
of that portion of them to the relator's uses.  And for any
tortious injury to the relator's superstructure, an action could

The People *v.* Cassity.

be maintained by it against a wrong-doer. The ties, stringers and superstructure constructed with them remained the property of the relator; and under the interest in the land which it had acquired, it was entitled to claim that so much of the streets and highways as was lawfully appropriated by it for their construction into a railroad, should be permanently devoted to their maintenance and support in that respect. To that extent the relator not only acquired an interest in the land itself, but beyond that, it also acquired a qualified possession of so much of it as was used in that manner and for that purpose; and it could maintain trespass for any unlawful injury to its rights in that respect. (*Dorney* v. *Cashford*, 1 Ld. Ray., 266; *Harrison* v. *Parker*, 6 East, 154; *Dyson* v. *Collick*, 5 Barn. & Ald., 600; 7 Eng. C. L., 203.) Its interest constituted title to lands to such an extent that a Justice's Court would have no jurisdiction over it in actions drawing in question the validity of its rights. (*Striker* v. *Mott*, 6 Wend., 465; *Saunders* v. *Wilson*, 15 id., 338; *Randall* v. *Crandall*, 6 Hill, 342.) And it could only be acquired by grant, or proceedings equivalent to a grant in their effect upon the title. (3 Kent, 7th ed., 528–9.) This interest certainly was not personal estate, and if it was not, it was as clearly a portion of the realty. And when the relator's superstructure was annexed and affixed to it, that was rendered by the attachment a portion of the same quality of property. By the grants delivered to the relator and the proceedings taken by it, the right was secured in the soil, of permanently constructing and maintaining a railroad upon it. This was an interest of a fixed, definite and permanent character in the land, and the superstructure was constructed upon it in such a manner as to render that an addition to that interest, and to appropriate both, to a useful and profitable employment.

If the interest acquired had formed no part of the streets and highways of the town, but had been solely confined to private property, the relator would not have claimed that the superstructure afterward placed upon that was not to be

deemed real estate. And yet, the difference between such a case and the present one, is simply one of degree. In each case the superstructure is affixed to an interest acquired for that purpose in the land, and designed to be permanently used with it. Either, without the other, would be useless; but both combined together constitute an entire and valuable property. In ordinary cases, when the superstructure is added to the land, the annexation renders what previously was personal, afterward real estate, and liable to be assessed as such. This point was fully discussed and definitely decided in the case of the *People* v. *Fredricks and others* (48 Barb., 173, 180, 181); and in *Mohawk and Hud. R. R. Co.* v. *Clute* (4 Paige, 384, 395). And no reason can exist for denying the same result to the act of attachment in the present instance. Though the estate in the relator may be less, it was still sufficient to form an interest in the land, and for that reason to change the character of the property affixed to it, for the purpose of being advantageously used and enjoyed with it.

The statute defining the term " land," for the purposes of taxation, does not require that the fee, or any other particular estate, shall be owned in it, in order to render it taxable as land. For that purpose the term is required to be construed as including not only the land itself, but all buildings and other articles erected upon or affixed to the same, &c. And that is broad and comprehensive enough to include the relator's superstructure, for it was composed of articles affixed to the land itself, not for a temporary purpose, but for permanent use and profit. This definition was declared to be a general one, and to include the terms " real estate " and "real property," whenever they occur in the chapter relating to the subject of taxation. (1 R. S., 5th ed., 905, § 3.) The next section of the same title providing that corporations shall not be taxed upon their capital as personal estate, for that portion of it that may have been invested in real estate, indicates that it was not intended that any particular estate should be required to constitute the term land. (1 R. S., 5th ed., 906,

§ 4.)   For the purpose of excluding that portion of the capital from taxation as personal property, all that was required was that it should be invested in real estate.   And so much of the relator's capital as was paid for the right to construct and maintain its railroad upon the streets and highways in question, and for the superstructure afterward made upon them, was invested in real estate within the terms used by this section.   It could not, therefore, be lawfully taxed as personal estate under the description given by this section of that species of property.   And if not taxable as real estate or land, under the preceding section, it would escape taxation altogether.

A similar interest was held to be taxable as land under this statute in the case of the *People* v. *Beardsley* (52 Barb., 105). In that case, the relator had secured the privilege of constructing a railway over the Allegany reservation of Indian lands.   And by the contract conferring it, there was a special restriction imposed upon the relator by which it was provided that it should not vest the fee of the land, as it clearly could not while it was a portion of the reservation, in the railroad company, nor the right to occupy the same for any purposes other than what might be necessary for the construction, occupancy and maintenance of the railroad. (Id., 107.) This certainly was no greater interest than the relator in the present case acquired.   And it was held, as to that interest in that case, that it could be properly taxed as real estate.   Since then, that decision has been affirmed by the Court of Appeals solely upon the ground that the interest secured by the contract, and the superstructure made upon the land was legally taxable as real estate under the terms of the statute.

The case of the *People* v. *The Board of Assessors of Brooklyn* (39 N. Y., 81), contains nothing in conflict with this conclusion.   For the main pipes which were then held not to be taxable as land, were neither erected upon nor affixed to the land.   And for that reason they were held to be exempt from taxation as real estate. (Id., 87.)

The assessment complained of as erroneous in the present

case was legal and proper within the statute referred to, and the proceedings of the respondents should therefore be affirmed.

MARVIN and E. DARWIN SMITH, JJ., concurring.

Assessment confirmed.