THE PEOPLE ex rel. THE DUNKIRK and FREDONIA RAILROAD COMPANY, Appellants *v.* JOHN J. CASSITY, EDWARD KEYS, and HENRY H. ARNOLD, Assessors of the town of Dunkirk, Respondents.

The term "lands," as used in the statute in relation to assessment and taxation (1 R. S., 360, §§ 1, 2), includes such an interest in real estate as will protect the erections or affixing, and possession of buildings and fixtures thereon, though unaccompanied by the fee; and such an interest, with the buildings and fixtures, may be assessed to the owner thereof.

Railroad corporations are not, in the purview of the tax laws, non-residents of any town, in which they possess lands; such lands are to be assessed against them, the same as against inhabitants of the town, and not as non-resident lands.

(Argued June 16th, 1871; decided September 2d, 1871.)

APPEAL by the relator from a judgment of the late General Term of the eighth judicial district, affirming the assessment of the respondents as assessors of the town of Dunkirk. The relator is a body corporate, organized under and pursuant to chapter 265, of the Session Laws of 1864, as amended by chapter 34, of the Session Laws of 1866. The relator's organization was completed in the month of December, 1865. By its articles of association, it was authorized to, and did, construct a railroad from a point near the depot of the Erie railway company, in the village of Dunkirk, through various public highways in the towns of Dunkirk and Pomfret, to a point near the Johnson House, in the village of Fredonia. The entire length of the road is three and a half miles less 150 feet, and is wholly within the towns of Dunkirk and Pomfret. The capital stock of the relator is $75,000, divided into 750 shares of $100 each. A little over 300 of these shares have been taken and paid for. The cost of constructing and putting the relator's street railroad in operation was $34,000. The relator's cars are run by horses, and not otherwise.

The relator procured the written consent, of all the persons owning the lands adjoining the public highways, in which its road was built, save one, who owned a strip of land fronting on the highway, about seventy rods.

On the thirty-first day of July, 1869, the respondents, as assessors of the town of Dunkirk, made an assessment *against the relator, by name,* for three and one-half miles of track for the sum of $5,000, and placed the track in the real estate column of their roll as real property. They treated the track, in making the assessment, as real property.

The relator, in due form of law, objected to the assessment so made by the assessors against it. The assessors refused to alter or change it.

The relator thereupon sued out a common-law certiorari, to review such decision.

*John Ganson,* for appellant, that track of relator's road is not land, within the meaning of the tax laws. (1 R. S., 387, § 2; *People* v. *Board of Assessors,* 39 N. Y., 81, 87; *Band* v. *City of N. Y.,* 2 Sand, 252, 259.) The assessors had no jurisdiction to assess relator as a corporation. (1 R. S., 389, § 6; *Albany and Schenectady Railroad Co.* v. *Osborn,* 12 Barb., 223; *The People* v. *The Board of Assessors,* 39 N. Y., 83.) The assessment should have been, as "non-resident lands." (1 R. S., 389, §§ 1, 2, 3; *New York and Harlem Railroad Co.* v. *Lyon,* 16 Barb., 651, 655; *Whitney* v. *Thomas,* 23 N. Y., 281, 285; *Oswego Starch Factory* v. *Dolloway,* 21 N. Y., 449, 455; *Western Transportation Co.* v. *Sheu,* 19 N. Y., 408; *Camel* v. *The National Protection Insurance Co.,* 10 How., Pr. R., 403; *Hubbard* v. *The same,* 11 How., Pr. R., 149.)

*A. J. Parker,* for the respondent. The property was properly assessed as lands. (1 R. S., 360, §§ 1, 2; *Hoyle* v. *P. and M. R. R. Co.,* 51 Barb., 45; *Minnesota Co.* v. *St. Paul Co.,* 2 Wallace, 609; 32 N. H., 484; Redfield on Railways, 576; *M. and H. R. R. Co.* v. *Clute,* 4 Paige, 384, 393; *Rood* v. *N. Y. and E. R. R.,* 18 Barb., 80, 85; *Mohawk and Railroad Co.,* 4 Paige, 394; 2 Sanford, S. C., 552; *The People* v. *Board of Assessors, etc.,* 39 N. Y., 87; *Craig* v. *Rochester City R. R. Co.,* 39 N. Y., 404; *Harrison* v. *Parker,* 6 East, 154; *Dyson* v. *Collick,* 5 Barn. & Ald., 600; 4 Kent., 432; *Stukes* v. *Nutt,* 6 Wend., 465; *Sanders* v. *Wilson,* 15 id., 338; *Randall* v. *Crandall,* 6 Hill, 342; 1 John, 145; 6 Wend., 465; 19 Wend., 507; 20 Wend., 96; *People* v. *Erie R. R. Co.,* 52 Barb., 105.)

Folger, J. The property assessed in this case, is the track of the relators, consisting of its stringers, ties and rails. This track is laid down in the public highway, and the relators have, or claim, no interest in the land of the highway, save a right to use the same, for the passage of their teams, and vehicles, to and fro over this track. This right they claim, and

doubtless have. And it includes a right to the constant and exclusive, and for the extent of their chartered existence, the lasting use of the soil, for the support of their track. It is an easement. (*Williams* v. *N. Y. Central R. R. Co.*, 16 N. Y., 97–109; *Craig* v. *R. and B. R. R. Co.*, 39 N. Y., 404.) And this is an interest in the land over which it is enjoyed. (Washburn on Easements, 6.) It gives them the right of the exclusive possession, as from time to time they shall need to use any part of it.

By the statutes in relation to assessment and taxation (1 R. S., 360, §§ 1, 2), "all lands * * * within this State, whether owned by individuals or by corporations, shall be liable to taxation * * *." "The term 'land' * * * shall be construed to include the land itself, and all buildings, and all other articles erected upon or affixed to the same * * *; and the terms 'real estate' and 'real property' * * * shall be construed as having the same meaning as the term 'land' thus defined."

By force of these provisions, the track of the relators, consisting of stringers, ties, and rails, affixed to the land; is for the purpose of assessment, and taxation, land, real estate, real property. And it is liable to taxation. To some name, or in some way, it should be assessed. This does not seem to be seriously disputed by the relators. But they suggest, that if the assessors did their duty, which is always to be presumed, then they assessed, to the owners of the fee in the land, over which the highway and the railway run, the land to the center of the highway, and must be presumed to have assessed to them, the land at a valuation affected, and increased by the value of the fixtures, which make the track of the relators. We do not think that such a presumption can be entertained. The facts of the case are too patent and well known, to permit the presumption, that the track was considered as belonging to the owner of the fee, which is little more than a reversion, contingent if at any time in the future, the different rights of way over the land shall cease.

We are not inclined to give to the terms of the statute, a construction so narrow as that required by the position of the relators. That would be to hold, that buildings and fixtures are not included in the term " land," except as inseparable, in the consideration of the ownership thereof, from the owner- ship of ·the fee ; and that no right or interest in land, less than the fee thereof, would, for the purpose of assessment, be deemed to fall within the meaning of " land," as set forth in the statute. The statute means, for its purpose, to make two general divisions of property ; one all lands, another all per- sonal estates ; and then, to be more definite, it declares, that by land, is meant the earth itself, and also all buildings and all other articles erected upon or affixed to the same. We do not think that, when buildings or other articles are erected upon or affixed to the earth, they are not, in the view of the statute, land, unless held and owned in connection with the ownership of a fee in the soil. We are of the opinion, that the statute means that such an interest in real estate, as will protect the erection, or affixing thereon, and the possession of buildings and fixtures, will bring those buildings, and fixtures within the term " lands," and hold them to assessment as the lands, of whomsoever has that interest in the real estate, and owns and possesses the buildings and fixtures. The defend ants were right then, in considering the track of the relators as land, and liable to assessment as such. (See *The People* v. *Beardsley*, 52 Barb., 105, since, [September, 1869], affirmed in this court.)

Another serious question raised by the relators is, whether the assessors were correct, in the mode of assessment adopted by them. It does not appear upon the papers as clearly as it might, what this mode was. But we think that so much is to be gathered from them, as to show that the track of the rela tors, was assessed against the company by its corporate name, and as would be the lands of a resident of the town. The return of the defendants to the writ of certiorari says that they " assessed the Dunkirk, and Fredonia Railroad Company for three and one-half miles of track, etc., the sum of $5,000.

and placed the same in the real estate column of their assess-
ment roll as real estate." And this phrase of "assessing
against the said company," is several times repeated in the
return. And at the conclusion of the return it is stated, that
"the only question presented, is whether the assessors were
justified, in assessing the Dunkirk and Fredonia Railroad
Company, * * * in the manner above stated." It is to be
inferred, that the name of the relators was entered upon the
assessment roll; and that the assessment of their track was
made against them, as if they were residents of the town.
That they were residents of the town, and that their track was
land of a resident, is denied by them; and it is claimed, that
the assessors erred in not assessing it as non-resident lands.

The question then, is, where is the residence of a corpo-
ration formed under the general railroad law, for the purpose
of the assessment of its real estate? Or is it to be predicated
of it, that it has, or that it needs to have, for such purpose, any
residence? There is nothing in that law, requiring from it a
designation of the town or county, where its operations are to
be carried on, as is the case in the general law for the forma-
tion of manufacturing companies. (Laws of 1848, chap. 40.)
It would, indeed, be impracticable to obey such a requirement,
from the very nature of the operations of a railroad company.
Hence, the case of *Oswego Starch Factory* v. *Dolloway* (21
N. Y., 449), cited by the relator, is not decisive of the ques-
tion above stated. For that case turned upon the fact, that
as required by law, a principal place of business was named
in the plaintiff's certificate of incorporation. And the same,
in effect, is to be said as to *Western Transportation Company*
v. *Scheu* (19 N. Y., 408). And it is further to be observed,
that in those cases, the assessment complained of was upon
the personalty of the plaintiffs. In *Conroe* v. *The Nat. Pro.
Ins. Co.* (10 How. Pr. Rep., 403), and in *Hubbard* v. *The
Same* (11 id., 149), cited by the relator, it was held, for the
purposes of determining the place of trial of an action, that
the place of general business of a corporation was its place
of residence. Though it is to be observed, that the charter

of the defendant in those cases, designated the place for carrying on its business. (11 How. Pr. Rep., 151.) But the inquiry is not touched by this. The law in relation to the assessment and collection of taxes, may be considered as practically a code by itself. The Revised Statutes (vol. 1, p. 414, § 1) enact, that *all moneyed, or stock corporations deriving an income, or profit* from their capital, or otherwise, shall be liable to taxation in the manner thereinafter prescribed. It is then (§ 2) provided that an officer of the corporation, shall yearly deliver to the assessors *of the town, or ward in which such company is liable to be taxed,* a written statement, among other things, of the real estate owned by such corporation, and the towns or wards in which it is situated, and the sums actually paid therefor. It is also provided (id., p. 415, § 6, as amended, Laws, 1853, chap. 654), that the assessors (*i. e.,* the assessors of *such town*) shall *enter the name* of all such incorporated companies upon *their assessment rolls,* with the quantity of real estate owned by them, and the actual value thereof.

These provisions of law are applicable to railroad corporations. The legislature has recognized them as so applying.

By chapter 536 of Laws of 1857, § 6, it declared, that the same should not thereafter apply to such corporations. But the next year (chapter 110, Laws of 1858), this section six, of chapter 536, of Laws of 1857, was repealed, and those provisions of the Revised Statutes, were again applicable to such corporations.

Where then is a railroad corporation "*liable to be taxed,*" as provided in section second above referred to? That section refers us to the sixth section of the second title of chapter thirteen of the Revised Statutes (1 R. S., p. 389, § 6), and declares, that they are liable to be taxed according to its provisions.

Making that reference, we find that the real estate of all incorporated companies, liable to taxation, "*shall be assessed in the town or ward in which the same shall lie,*" in the same manner as the real estate of individuals. The real estate of individuals, however, is to be assessed as that of a resident or

of a non-resident, as may be the particular condition, in that regard of each individual.

And yet this is not controlling. For though there is this general provision, that the real estate of corporations shall be assessed in the town, or ward in which the same shall lie, in the same manner as the real estate of individuals; we have seen that there is also, the particular provision above referred to (1 R. S., 415, § 6), that the assessors shall enter on their assessment rolls, the name of each incorporated company in their respective towns or wards, liable to taxation on its capital *or otherwise.* The result of these provisions read together, as they must be, is that the real estate of corporations, is to be assessed in the town, or ward in which it lies. This makes the corporation liable to taxation in that town or ward; for, though not liable to taxation on its capital, it is liable "*otherwise.*" Then comes in the specific direction to the assessors (sub., 1, § 6, p. 415, 1 R. S.), to insert in the first column of their assessment rolls, the name of each incorporated company in their respective towns or wards thus liable to taxation; in the second column, the quantity of real estate owned by such company, situated within their town or ward; and in the third column the actual value thereof.

It is evident from these enactments, that these corporations are not in the purview of the tax laws, deemed to be non-residents of any town in which they possess real estate, or to be treated as such.

In general, the real estate owned by them, is to be assessed in the same manner as the real estate of individuals. (1 R. S., p. 389, § 6.) And, in particular, they are to be assessed for their real estate in each town in which it lies, by the entry of their name, the amount of the real estate, and its value upon the assessment rolls, in the same manner as would be done with an inhabitant of the town. (See *Mohawk and Hudson R. R. Co.* v. *Clute*, 4 Paige, 384 ; and see *Sherwood* v. *S. and W . R. R. Co.*, 15 Barb., 650.)

And the current of legislation has continued in the same course. Thus, by chapter 694, of Laws of 1867, the town

assessors are required, to apportion the valuation of the property of " every railroad company, as appears on their assessment list," among the several school districts in the town ; and the amount apportioned to each district, shall be the valuation on which all taxes " against said companies," shall be levied. Thus, by chapter 907 of the Laws of 1869, section 10, it is provided, that no municipal corporation shall aid in building a railroad, which will compete with one already in operation, through that municipality, unless the one already built, shall appear by its name on the assessment roll specified in the act. And the same provision is repeated in a similar act of 1871 (chapter 925, § 10, Laws of 1871).

Thus, by chapter 506, of the Laws of 1870, it is provided, that the clerk of the board of supervisors, (save in New York and Kings) shall deliver to the county clerk, a statement showing the title (*i. e.* the corporate name) of all railroad corporations in the county, as appears on the last assessment rolls, and the valuation of their real, and personal property.

Some of these enactments are subsequent to the origin of the cause of litigation in this case. But they are cited, to show that the legislative understanding has been, that the names of railroad corporations do, as a usual thing, appear upon the assessment rolls of the several towns in which they own real estate ; and that so appearing, that real estate must be assessed against them, the same as against inhabitants of the town, and not as the lands of non-residents. And from all this is to be deduced, that so far as the assessment and collection of taxes against the real estate of railroad corporations is concerned, they are not to be deemed residents of any particular place.

And that a railroad corporation is to be treated as *sui-generis* in this matter, is further apparent, from the fact that the general provisions of law, for the assessment of taxes upon real estate will not, with precision, affect its case.

The Revised Statutes volume 1, p. 389, §§ 1, 2, (as amended by chap. 176 of 1851, section 3) provide that : Section 1. " Every person shall be assessed in the town, or ward where he resides

when the assessment is made, for all lands then owned by him, or wholly unoccupied. Section 2. Land occupied by a person other than the owner, may be assessed to the owner or occupant, or as non-resident lands. Section 3. Unoccupied lands, not owned by a person residing in the ward or town where the same are situated, shall be denominated "lands of non-residents," and shall be assessed as hereinafter provided."

The lands of a railroad corporation of any magnitude, will necessarily be found in more than one town, and could not be assessed under the first of these sections, unless it should be held, that the corporation is a resident of each town into which its track runs. Thus to hold, would bring us to the same conclusion which we reach otherwise. They could not be assessed under the second section, because they are not occupied by a person other than the owner, which will scarcely ever be, for the occupation is by the servants and employes of the corporation, and is its occupation, as it can only act through them. They could not be assessed under the third section, for the lands are not unoccupied. Hourly they are in the use, and occupation of the corporation for all its various purposes.

It is claimed however, that the provisions of the 1 R. S. (414, § 2, above cited), apply only to the town in which the principal place of business of the corporation is located, and that the reference in it, to the provisions of section six, (1 R. S., p. 389), is only to those provisions, which direct when the personal estate of a corporation shall be assessed. It is to be borne in mind, that when the Revised Statutes were adopted, there had been "no railway constructed in this State, and only one charter had been granted. It is not surprising, therefore, that no special provisions, in relation to such companies should be found in the tax laws. They must be governed, by the general provisions relative to the taxation of real and personal estates of corporations." (4 Paige, *supra*.)

Now the 1 R. S., 414, § 2, requires, that the officers of the corporation shall furnish a statement to certain assessors. To what assessors? To the assessors of the town, in which the corporation is liable to be taxed, according to the provisions of section six, of article second, of the same chapter. That section provides, that the real estate of all incorporated companies, shall be assessed in the town or ward in which the same shall lie. Those who contend for the construction which we are now criticizing, seem to ignore this provision, and apply the reference of the second section of title four, wholly, and only to the other part of section six of title two, which directs, that all the *personal* estate of an incorporated company, shall be assessed in the town or ward, where the principal office or place of transacting the financial concerns shall be, or where its operations shall be carried on. We cannot admit the propriety of this. One is as much a part of the law as the other. One is equally susceptible of application to the case of a railroad corporation, as the other. There is no torturing of the language, or meaning, or intent of the enactment, in making the one,—as well as the other, applicable; and the town in which the land of a railroad corporation lies, is as much the town in which such corporation is liable to be taxed, as is the town in which is its principal office. In the first only, can its real estate in that town be assessed. In the last only, can its personal property and such land as lies within it be assessed.

It is not necessary to notice the reasoning, from the provisions of the statutes, in relation to the making up of the assessment rolls, by which the conclusion is sought, that the lands of a railroad corporation should be placed thereon among the lands of non-residents. If we have come to a correct conclusion, that in the purview of the assessment laws, a railroad corporation is to be treated, as would be a resident of every town, or ward in which it has real estate, not because it is a resident, but because its lands must be assessed in the town in which they lie, as are those of an inhabitant thereof, then

that reasoning has no place in the discussion. For it's essential is, that the corporation is a non-resident of every place, except that in which it has its principal office.

The judgment of the court below should be affirmed, with costs to the respondents.

All concur.

Judgment affirmed.