THE PEOPE ex rel. JAMES W. SMITH *v*. THE COMMIS-SIONERS OF TAXES AND ASSESSMENTS FOR THE CITY OF NEW YORK.

PEOPLE ex rel. WILLIAM R. RENWCK *v*. THE SAME.

*Taxation — what subject to — " land " — meaning of.*

Certain lots under water were conveyed to the relator's grantor by the city of New York, the conveyance reserving therefrom so much thereof as formed part of Stanton street, "for the use and purpose of public streets and highways," the grantee covenanting to build a wharf on that portion reserved for Stanton street, and keep the same in good repair, and that the same should always be used as a public wharf, he to have and enjoy all wharfage, cranage, benefits and advantages growing or arising from the wharf so erected. *Held,* that the interest of the grantee in the wharf so erected was "land," within the meaning of that term as used in the statutes of this State relating to taxation, and was properly assessed as such thereunder.

Certiorari to review the proceedings of the commissioners of taxes and assessments of the city of New York, in assessing certain property belonging to the relator.

*E. O. Andrews,* for the relator. The land upon which the pier is built belongs to the mayor, etc., being part of one of their streets. The pier, though built by Smith, belongs to the mayor, etc., being attached to their realty. Being their own property, it is not taxable. (Dillon, Munic. Corp., vol. 2 [2d ed.], § 614; Cooley on

**208** PEOPLE ex rel. SMITH *v.* COMRS. OF TAXES.

First Department, March Term, 1877.

Taxation, 130.) What property the relator has here is an exclusive and perpetual right to go upon the pier, it being part of a public street, to receive wharfage from persons using the pier. This is not land or real estate or personal property. It is a franchise, an incorporeal hereditament. (*Boreel* v. *The Mayor*, 2 Sandf., 552; 3 Kent's Com., 458, 459; *De Witt* v. *Hays*, 2 Cal., 468.) Being neither land nor personal property, the relator's franchise was not liable to taxation. (*Boreel* v. *The Mayor*, 2 Sandf., 552; *De Witt* v. *Hays*, 2 Cal., 468.)

*Wm. C. Whitney*, for the respondents.

Daniels, J.;

In 1852, the mayor, etc., of the city of New York conveyed a water lot, or land under the water of the East river, to William Smith and Milton G. Smith. It was described by metes and bounds in the deeds, subject to the reservation of so much of the premises as formed parts of East and Stanton streets "for the use and purposes of public streets and highways," to be extended through the premises conveyed. The deed contained "a covenant, on the part of the grantees, that they, their heirs and assigns, would build, on the requisition of the said mayor, aldermen and commonalty, such wharfs or piers on that part of Stanton and East streets as should be directed, and keep them at all times thereafter in good order and repair, and that the same should always be and be used as public wharfs." And the deed also contained a covenant, on the part of the corporation, that the parties of the second part (the said Smiths) their heirs and assigns, should and might, at all times thereafter, have and enjoy all wharfage, cranage, benefits and advantages growing or arising from the wharves so erected. William Smith afterwards acquired the rights of the other grantee in the premises, and erected the wharf on Stanton street, mentioned in the covenant, and he conveyed it to the relator by deed, dated on the 20th of June, 1866, "together with the privileges, advantages, hereditaments and appurtenances thereto belonging." His interest in the property was assessed by the respondents at the sum of $4,000. To that he has objected that it is an interest not liable to taxation under the laws of this State.

While the wharf has been erected, and is maintained as a portion of a public street, it is evidently not for the general purposes of travel as other portions of the streets of the city are used, but for the use of persons having occasion to go upon it for the transaction of the business to which these structures are always devoted, and subject to that use of it. The wharf was designed for the mooring, lading and unlading of vessels, and for the transfer of property to and from them; and, by the deed made conveying the land, the right and privilege of carrying on this business, upon and by means of the wharf, were conveyed to the grantees, their heirs and assigns, for their own benefit, profit and advantage. That gave them the substantial use and enjoyment of the property in perpetuity, subject only to the right of the public to pass on and off the wharf as a street. That was an exception or reservation of an important character; but it could not so far interfere with the grantee under the deed, as practically to impair his rights to have the land devoted to the maintenance of the wharf, or prevent him from enjoying all the advantages and emoluments derived from that structure in its use as private property, for all the purposes to which it could be appropriately applied in carrying on commercial business. So far as the formal title was left in the city, it was subject to such burthens as constituted all the substantial elements which may be derived from the ownership of property; and under the terms of the statute that was sufficient to render such owner liable to taxation on account of it. The provisions made upon that subject were evidently designed to include every species of real and personal property. (*Barlow* v. *St. Nicholas Bank*, 63 N. Y., 399, 406.) For it was declared that "all lands and all personal estate within this State, whether owned by individuals or corporations, shall be liable to taxation," subject to certain exemptions not requiring special consideration, because they are not particularly applicable to this case. And the term "land," it was provided, "shall be construed to include the land itself, all buildings and other articles erected upon or affixed to the same, all trees and underwood growing thereon," etc. (1 R. S. [5th ed.], 905, §§ 1, 3.) The wharf was erected upon and affixed to the soil, within the import of these terms as they were used in this statute; and the relator was its substantial owner. The privileges secured to him were such as could

210    PEOPLE ex rel. SMITH v. COMRS. OF TAXES.

First Department, March Term, 1877.

be only created by deed, and he derived his right to their enjoyment by an instrument of that description. They were supported by an interest in the land constituting a right to have it devoted to the purposes mentioned in the original deed, and they rendered him the beneficial owner of it. Property devoted to the ordinary pursuits of business cannot usually be more completely subject to the use and profit of the owner than this was rendered. The substantial advantages which can be secured from the land have been conveyed to him; and his interest in it is very nearly equivalent to that of the absolute owner. It was not personal property in any sense of that term, and still it was as surely property. It depended upon and issued out of the land, and constituted an interest in it of a most valuable nature. For that reason, it was a part of the land, and within the meaning of that term as it was used in the statute declaring what should be the subjects of taxation.

Under somewhat analogous circumstances, the right of a railway company to maintain and operate a railway over the lands of the Seneca Nation of Indians, and to which it could acquire no title, was held to be taxable in *People* v. *Beardsley* (52 Barb., 105). And that was afterwards affirmed by the Court of Appeals. The same conclusion was adopted concerning the interests which a street railway company acquired in certain streets by the construction of a street railway over them in the case of *The People* v. *Cassity* (2 Lans., 294). The subject was fully examined at that time, and a repetition of what was then said upon it, and the authorities relating to it, will, for that reason, be unnecessary on the present occasion. That case was taken to the Court of Appeals and the liability of the interest of the company to taxation as land was affirmed. (46 N. Y., 46.) And these authorities, in principle, sustain the liability of the relator to taxation on account of this property.

In the case of *Boreel* v. *Mayor, etc.* (2 Sandf., 552), this subject was considered, and the conclusion adopted that the interest of the grantee in the property was not liable to taxation. But as the point was not actually presented by the facts at that time before the court, and a more enlarged construction than was then considered proper has been since placed on the term "land," as it has been used in the statute, this authority should not be accepted as control-

ling in this instance. If it should be, then, as it was there held, all incorporeal hereditaments must escape taxation, and that could not have been the legislative design in the enactment of the law. The intention on the other hand was, that the term "land" should be understood as including whatever was properly comprehended by it; and incorporeal hereditaments constitute a part of that subject-matter. The exceptions and exemptions contained in the statute also support this conclusion, for they exhibit the existence of a design to specifically enumerate all that should not be rendered subject to taxation, and interests of this nature are within neither of the exemptions. By excepting the property they relate to, it was apparently intended that the statute should be understood as subjecting all other property and interests to the burthens of taxation; and justice to other property owners, and to the public, is in favor of that construction.

The case of *People ex rel. Renwick*, submitted with this one, presents only the point already considered, and does not require any further examination for the purpose of determining the disposition which should be made of it. In that, as well as the case of Smith, the action of the respondents should be affirmed, with costs.

DAVIS, P. J., concurred.

Present — DAVIS, P. J., BRADY and DANIELS, JJ.

Proceedings affirmed.