PEOPLE *ex rel.* CENTRAL PARK, N. & E. R. R. Co. *v.* COMMISSIONERS OF TAXES AND ASSESSMENTS.

*(Supreme Court, General Term, First Department.   January 28, 1889.)*

1. TAXATION—TAXABLE PROPERTY—RAILROAD COMPANIES.
    A street railway, including its bed and superstructure, is liable to taxation as real estate, under 2 Rev. St. N. Y. (7th Ed.) p. 981, § 2, providing that "land," "real estate," or "real property," as used in the chapter concerning taxation, shall include all surface, under-ground, or elevated railroads, railroad structures, substructures, superstructures, tracks, etc., branches, switches, and other fixtures authorized to be laid, etc., in any public or private road, street, or grounds.

2. SAME—CORRECTION OF ASSESSMENTS—CERTIORARI.
    A tax-payer in New York city who neglects to apply to the tax commissioners to correct an assessment as prescribed by Laws N. Y. 1882, c. 410, § 820, cannot question it on *certiorari.*

3. CERTIORARI—PLEADING AND PROOF—DENIAL OF PETITION.
    On *certiorari* to review and correct assessments, denials of excessive valuation of relator's property, or of failure to properly value and assess other property, they being responsive to statements in the petition, are conclusive, when not overcome by proof.

Appeal from special term, New York county.

Writ of *certiorari* issued on relation of the Central Park, North & East River Railroad Company to the commissioners of taxes and assessments of the city of New York, to review and correct assessments.   The assessments were confirmed, the writ dismissed, and relator appeals.   Laws N. Y. 1881, c. 293, amend Rev. St. pt. 1, c. 13, tit. 1, § 2, as follows, (2 Rev. St. 7th Ed. 981, § 2:)   "Sec. 2. The term 'land,' as used in this chapter, ['Of the Assessment and Collection of Taxes,'] shall be construed to include the land itself above and under water; all buildings and other articles and struct-

ures, substructures, and superstructures erected upon, under, or above, or affixed to, the same; \* \* \* all surface, under-ground, or elevated railroads; all railroad structures, substructures, and superstructures, tracks, and the iron thereon; branches, switches, and other fixtures permitted or authorized to be made, laid, or placed in, upon, above, or under any public or private road, street, or grounds. \* \* \* The term 'real estate' and 'real property,' whenever they occur in this chapter, shall be construed as having the same meaning as the term 'land,' thus defined."

Argued before DANIELS and BARTLETT, JJ.

*De Los McCurdy* and *B. W. Franklin,* for appellant. *George S. Coleman,* for respondents.

DANIELS, J. The writ of *certiorari* was issued to review and correct the assessments of the relator's real estate and street railway, made in the year 1883. It was averred in support of the application for the writ that the valuation made by the commissioners for the assessment of the property exceeded that which they should have adopted; that the assessments were made at a higher proportionate value than other real estate or personal property on the same roll; that the personal property of taxable inhabitants had been intentionally omitted; and that the rule adopted for the assessment of real estate did not exceed 60 per cent. of its value, and that the relator's property was assessed at a higher valuation than this percentage. By the return of the commissioners the proceedings themselves appear to have been regularly conducted, as they were prescribed by subchapter 16 of chapter 410 of the Laws of 1882; and also conformably to the provisions of the Revised Statutes, so far as they remained applicable to the proceedings. The railway of the relator is commonly known as the "Belt Line," extending around a large portion of the city, and so much of it as was located within the several wards through which the railroad passed was separately assessed as the property of the relator within such ward. This railway, including its bed and superstructure, was "real estate," within the definition of that description of property contained in chapter 293 of the Laws of 1881; and that it was liable to assessment and taxation under the laws of the state as real estate had previously been held in *People* v. *Cassity,* 2 Lans. 294, affirmed 46 N. Y. 46, and *People* v. *Commissioners, etc.,* 82 N. Y. 459. By the return of the commissioners to the writ, it appears that, after the assessments were made, the books containing them were open for examination and correction from the second Monday of January, 1883, until the first Monday of the following month of May, and that this fact was advertised according to law. The relator in its petition has stated the fact to be that during this period an application in writing, as that was provided for by subchapter 16, c. 410, Laws 1882, was made to the commissioners to correct the valuation of the petitioner's property. But this has been denied by the commissioners, who have returned that no application was made on behalf of the relator to have the assessed value of its property corrected; and it appears, further, that the assessments were made certainly at no greater valuation than the law prescribed and allowed that to be done.

A reference by consent was made to a referee to take evidence as to this and other assessments complained of by the relator. But no evidence was obtained under the order which will justify the conclusion that the commissioners proceeded erroneously in the confirmation or making of the assessments. . The return also states the facts to be that the assessments were not made upon an overvaluation, or at a higher proportionate value than other real estate valued by the commissioners, and entered on their books. And in their return they denied the statement that the taxable inhabitants of the city had not been faithfully assessed for personal property for the year 1883, or to any greater extent than 15 per cent. of the value of such property, or that the

real property in the city had not been faithfully assessed for the year, or had not been assessed for more than 60 per cent. of its true assessable value, or that the assessment of the relator had been made at a higher proportionate value than other real or personal property on the same rolls. These denials by the commissioners were directly responsive to the statements made and contained in the petition for the writ, and are for that reason conclusive against the relator, inasmuch as neither denial has been overcome by proof taken under the order of reference. For the correction of assessments of real estate for the purposes of taxation, a summary and inexpensive proceeding before the assessors themselves was provided, both by the Revised Statutes and the act under which these assessments were made. 1 Rev. St. (6th Ed.) pp. 937, 938, §§ 18-21; chapter 410, Laws 1882, § 820. The relator omitted to avail itself of this remedy; and by reason of that omission, both under the preceding practice, as well as that provided for by chapter 269 of the Laws of 1880, it deprived itself of the right to question the legality of these assessments. *People* v. *Commissioners,* 99 N. Y. 254. The order was consequently right, and it should be affirmed, together with the usual costs and disbursements. All concur.