THE PEOPLE OF THE STATE OF NEW YORK ex rel. JOHN DAVIDSON and Others v. EDWARD GILON and Others, Composing the Board of Assessors.

*Assessment for street pavement under section 878 of chapter 410 of 1882 — a horse railroad company should be assessed for such work.*

The provisions of section 878 of chapter 410 of the Laws of 1882, directing an assessment for the paving of a street in the city of New York, to be made among the owners or occupants of all the houses and lots intended to be benefited thereby, were simply a re-enactment of existing provisions of law, and should be construed with the other laws existing prior to 1882 concerning local improvements in said city.

A horse railroad company is benefited by the laying of a pavement in the street between the rails of its tracks, and is subject to assessment therefor; and not to assess such company for such work is a manifest error on the part of the assessors, which it is one of the offices of the writ of *certiorari*, authorized by chapter 269 of the Laws of 1880, to correct.

Certiorari to review the action of the members of the board of assessors, and of the board of revision and correction of assessment-rolls, in the matter of an assessment made by the board of assessors for the expense incurred for paving Madison avenue, from One Hundred and Thirty-third street to One Hundred and Thirty-seventh street, in the city of New York.

The writ was applied for upon the ground that the entire amount of the expense of said improvement, including the cost of paving between and about the tracks of the horse railroad belonging to and operated by the New York and Harlem Railroad Company, through the said avenue between the said streets, had been assessed upon houses and lots in the vicinity thereof, and that no part of said expense had been assessed upon said railroad company or its property.

*Truman H. Baldwin*, for the relators.

*G. L. Sterling*, for the respondent.

Daniels, J. :

The expenses of the improvement were mainly assessed upon the property fronting upon the avenue. Before it was either ordered or made, the assessors in their return to the writ have stated the

facts to be, that there was, and is, in said avenue, between One Hundred and Thirty-third and One Hundred and Thirty-seventh streets, a double line of track, owned and operated by the New York and Harlem Railroad Company, as and for a horse railroad, and that the avenue has been paved between and about the said railroad track, and that the amount of said paving has been included in the above gross amount of paving done on said avenue, and assessed upon said houses and lots as aforesaid.

But they assessed no part of the expense of the improvement upon the structure of the company, for the combined reason that in their opinion it had not been benefited by the pavement of the avenue, and it was not under the laws assessable therefor.

The railway was operated by horse-power, employed to move the cars of the company, in carrying and transporting passengers for hire. And in that use it is clear, beyond reasonable ground for controversy, that the railway tracks had been improved and benefited by the pavement. So much of it as was laid between the rails supplied the company with a solid and permanent road-way for the use of its horses, not liable to be affected or impaired by the weather, as the unpaved earth necessarily would be. There was, therefore, no foundation for the opinion of the assessors to rest upon, that the road-bed and structure of the company had not been benefited by the pavement. In this conclusion, adopted by them, there was a manifest error, which it is one of the offices of the writ of *certiorari*, as it has been provided for, to correct. (Laws of 1880, chap. 269.)

The more substantial reason for omitting the railway tracks from the payment of a proportionate part of the expenses of the pavement was the construction the assessors considered it to be their duty to place upon the laws applicable to the assessment of expenses for local improvements. The company had not been in any form exempted from the obligation to contribute towards the expenses, by chapter 825 of the Laws of 1872, under which this part of its railway had been laid. The act was wholly silent in this respect. The authority was provided by it for extending the tracks through this part of the avenue upon the payment of the value of the rights and privileges conferred, to the mayor, etc., of the city, as that should be ascertained by commissioners to be appointed for that

object. But this act contained nothing which, either in language or by implication, relieved the company from defraying the expenses of benefits conferred upon it by the improvement of the avenue.

What it obligated the company to pay was for no more than the right or privilege of laying its tracks in the avenue, and afterwards using them as a street railway. And that is the utmost extent of the advantages derived by the company from that act.

It was, however, considered by the assessors that they could charge the company, or its structure in the avenue, with no part of the expense of the pavement, for the reason that section 878 of chapter 410 of the Laws of 1882 directed the assessment of the expenses to be made among the owners or occupants of all the houses and lots intended to be benefited thereby. And it must be assumed that the literal observance of this language would exclude the company and its railway and require the owners of the houses and lots to defray the entire expense of the improvement.

But the incorporation of this section in the act of 1882 was not its enactment as a law by the legislature. It was no more than its compilation as one of the laws already existing relating to the city of New York. And it derived its force and effect from its own enactment, and not from this compilation. The enactment of it as a law dates farther back even than the 9th of April, 1813, when, in a similar manner, it was made section 175 of chapter 86 (vol. 2, p. 407), of the Revised Laws of the State. And it should now be construed with the other laws since enacted concerning local improvements, and necessarily affecting its meaning and application.

At the time when it was made a part of the Laws of 1813 the use of a street or avenue for a railway was unknown and did not exist. That possibility was not within the knowledge or anticipation of the enacting authority. It has been a more modern development under other laws framed to provide for and regulate its use and enjoyment. Through its existence a valuable property has been created, unknown to and not within the contemplation of earlier laws. And that property has furnished another subject of taxation, and that, too, within the comprehension of laws previously enacted. (*People* v. *Cassity*, 2 Lans., 294 ; 46 N. Y., 46.) And it has since been defined and declared to be liable to taxation by chapter 293 of the Laws of 1881. And similar progress has been made, though not in as direct

language, in providing for the payment of the expenses of local improvements.

By section 1 of chapter 313 of the Laws of 1874, it was provided and declared that all property, subject to an exception inapplicable to this controversy, should be liable to assessment when it should be benefited " by any improvement or other public work already completed or now being made or performed, and hereafter made, done or performed " And this law has been made section 899 of the act of 1882. Its language is very broad, so much so as literally to include this pavement. And subdivision 2 of section 868 of the consolidation act also provided for the same obligation by directing the board of assessors to assess upon the property benefited the certified amount of its expenses. The direction that this should be done in the manner authorized by law, and in the proportion so authorized, in no way restrains the provisions subjecting all the property benefited to assessment for the expenses. For this phraseology includes no more than the proceedings prescribed for making the assessments. They have been clearly declared and defined, and the assessments are to be made by observing and following that course of proceeding, and the proportion authorized by law to be assessed is so much as the property has been benefited by the improvement to be paid for. No other objects were intended to be subserved by these phrases, but they were adapted to the promotion of what had been otherwise so plainly declared, that all the property benefited by a local improvement should defray the expenses of making it.

And this general principle has modified and enlarged the effect of the section of the act of 1813, which directed the assessment of the expense to be made among the owners and occupants of the houses and lots benefited. And that was considered to be the result of more recent legislation in the case of the *Mayor* v. *Colgate* (12 N. Y., 140, 153). In 1813 houses and lands were the only property which could be benefited by a street improvement, and it was entirely proper to designate their owners as the persons who should be required to pay the expenses. But since then a new and additional structure has been placed in the streets of cities and villages, which will be as much benefited by their pavement as the houses and lots, and may with equal propriety be directed to divide the expenses with their owners. This advancement since street

railways have been constructed has at all times been within the knowledge of the law-making authority. And there is every reason for concluding, when it was clearly and expressly declared, that the property benefited by a street improvement should bear its expense, that it was intended that street railways should not be exempted from that obligation. And the law has generally been construed to be attended with that effect. (*Troy, etc., R. R. Co.* v. *Kane*, 9 Hun, 506.) There the law had made the property benefited by a street improvement liable for its expense. And the railway company was, under that principle, required to contribute to the expenses of constructing a sewer deemed to benefit it, although under the surface of the street. And, under general provisions no broader than these affecting the city of New York, a similar liability has been in other instances sustained. (*City of Chicago* v. *Baer*, 41 Ill., 306 ; *City of New Haven* v. *Fairhaven, etc., R. R. Co.*, 38 Conn., 432 ; *Northern Indiana, etc., Co.* v. *Connelly*, 10 Ohio [Critchfield], 159.) And it was applied to the structure of a steam railway in *Peru, etc., Railroad Company* v. *Hanna* (68 Ind., 562). But that application of the principle was denied in *Philadelphia* v. *Philadelphia, etc., Railroad Company* (33 Penn., 41) and *Junction Railroad Company* v. *Philadelphia* (88 id., 424) for the reason that railways of that description would not be benefited by these improvements. The fact itself is different in the case of a street railway, which must be necessarily benefited by laying a permanent stone pavement, as that was which was placed on this avenue between its tracks and rails, and immediately adjacent thereto. And so far as the company owning this railway was benefited by the pavement it should have been proportionately required to bear its expense. The charge of that part of the expense upon the owners of the houses and lots made them, or their property, bear this obligation of the railway company. And that the assessors could not legally do, even if the company itself could not be made to pay for its proportion of the benefit. For the inability to enforce payment for a benefit created against one person or his or its property will supply no legal ground for obliging another to make compensation for that benefit.

But there was no such inability here. For the proceedings, provided for assessing the expense of the benefit to the property of the

railway company, were as well adapted to make that assessment as they were to assess the houses and lots for the benefits received by them. They equally applied to every species of property benefited by the pavement, whether that of individual owners or of a railway company. And in case of failure to pay, the railway could be as readily sold as could be a house and lot. The same means for imposing and collecting, or realizing the assessment exists in one case as it does in the other. And the assessors erred in failing to carry it into effect against the street railway company. Complete authority has been provided for the correction of this error by chapter 269, Laws of 1880. The proceedings are not stayed by the *certiorari*, and the fact that they may have, since the service of the writ, passed beyond the authority of the assessors forms no answer to the right of the relators to a review of them.

The assessment, so far as it has charged them with the proportionate part of the benefit of the pavement, which was received by the railway company improving its structure in the avenue, should be reversed and the proceedings remitted to the assessors to assess the expenses upon the company and its property so far as it has been benefited, and the residue only upon the houses and lots of the relators.

BRADY, J., concurred; VAN BRUNT, P. J., dissented.

Proceedings reversed as directed in opinion.