The franchise of a turnpike company is not subject to assessment for taxation by the assessors of a town in which part of the road is located.

2. SAME—IMPROVEMENTS—EASEMENTS—LAND.

Where a turnpike company did not own the fee in the land on which its pike was constructed, but owned a continuing easement therein for the maintenance of the pike during the life of the company's franchise, such easement, together with the corporation's tangible property, consisting of bridges, culverts, ditches, prepared roadbeds, and structures on the soil, were taxable to it as "land," under Laws 1896, p. 796, c. 908, § 2, subd. 3, as amended by Laws 1899, p. 1589, c. 712, providing that the term "land" shall include not only the land itself, above and under water, but all buildings and other articles and structures, and superstructures erected upon or under the same, etc.

Certiorari, on petition of the president, directors, and company of the Albany & Bethlehem Turnpike Road against William Selkirk and others, as assessors of the town of Bethlehem, to review the assessment of relator's road as real estate subject to taxation within such town. Writ dismissed.

The president, directors, and company of the Albany & Bethlehem Turnpike Road is a turnpike corporation incorporated and acting under chapter 90 of the Laws of 1804. Said act of incorporation was amended by chapter 77 of the Laws of 1805, chapter 164, p. 145, of the Laws of 1818, chapter 46, p. 33, of the Laws of 1830, chapter 41, p. 26, of the Laws of 1843, chapter 63, p. 160, of the Laws of 1859, and chapter 427, p. 704, of the Laws of 1888. In the year 1903 said assessors placed upon the assessment roll of said town, in the first column thereof, the words "Albany and Bethlehem Turnpike Co.," and in the second column thereof, and after said name, the words, "From city line to Babcock's corners, and a branch from Corning's Hill to gate of Isaac Sanders on River road below Abbey Hotel—5 miles of highway," and in the third column thereof, and opposite said description, the figures "$20,000." This writ was issued to review the action of said assessors in making said assessment. The relator insists that the assessment should be wholly set aside, for the reason that it does not own any real estate in the town of Bethlehem. No question is raised in this court as to the name by which the relator is assessed, nor as to the amount of the assessment, nor as to there being five miles of highway within said town of Bethlehem, maintained by the relator and from travelers, upon which it takes toll.

Argued before PARKER, P. J., and SMITH, CHASE, CHESTER, and HOUGHTON, JJ.

Tracey & Cooper (Frederick Townsend, of counsel), for relator.
Newton B. Van Derzee, for assessors.

CHASE, J.   The relator's franchise is not subject to assessment, at least by the town assessors, and the respondents did not assume to assess it.   The assessment was upon the five miles of highway as real property, and, unless the assessment can be sustained as an assessment upon real property, it must fall.

By the Tax Law (subdivision 3 of section 2 of chapter 908, p. 796, of the Laws of 1896, as amended by chapter 712, p. 1589, of the Laws of 1899) it is provided:

"The terms 'land,' 'real estate,' and 'real property,' as used in this chapter, include the land itself above and under water, all buildings and other articles and structures, substructures and superstructures, erected upon, under or above, or affixed to the same; all wharves and piers, including the value of the right to collect wharfage, cranage or dockage thereon; all bridges. * * *"

The evidence before us is not sufficient to justify the conclusion that the relator owns the fee of said highway.   An assessment upon real property includes, as a part of the property assessed, something more than the fee of the land.   When the owner of the fee of the land owns all buildings and other articles and structures, substructures, and superstructures erected upon, under, or above, or affixed to the same, they are included in the one assessment.   When one person owns the fee of the real property, and another person owns the articles and structures erected upon, under or above, or affixed to the same, the fee of the land can be assessed to one person, and such articles and structures thereon can be separately assessed as real property to the person owning the same.

In a case where a railroad company maintained its track, consisting of stringers, ties, and rails laid in a public highway where it had no interest in the land of the highway, save a right to use the same for the passage of its teams and vehicles to and fro over its track, but which right was constant and exclusive and for the extent of its chartered existence, the Court of Appeals held that such company had an easement in the land over which such right was enjoyed, and that such easement was, for the purposes of assessment, real property.   The People ex rel. D. & F. R. Co. v. Cassity, 46 N. Y. 46.   The court, referring to the statute then existing, say:

"We do not think that, when buildings or other articles are erected upon or affixed to the earth, they are not, in the view of the statute, land, unless held and owned in connection with the ownership of a fee in the soil.   We are of the opinion that the statute means that such an interest in real estate as will protect the erection or affixing thereon, and the possession, of buildings and fixtures, will bring those buildings and fixtures within the term 'lands,' and hold them to assessment as the lands of whomsoever has that interest in the real estate and owns and possesses the buildings and fixtures.   The defendants were right, then, in considering the track of the relators as land, and liable to assessment as such."

In an action brought to set aside an assessment on a certain pier, where the owner of the pier did not own the fee of the land upon which

it was built, the Court of Appeals, in Smith v. The Mayor, 68 N. Y. 552, say:

"Under the laws of our state a mere franchise or incorporeal hereditament of any kind is not taxable except by special statute. The plaintiff has a franchise to construct and maintain this pier and take wharfage for its use. The pier itself is a structure built under his franchise. It is tangible, bulky property, and in no sense incorporeal. It is not like a mere right or privilege which has no physical existence. A person may have a franchise to build and maintain a bridge and take toll for its use. The bridge, as a structure, is not a franchise. He may not be taxed on his franchise, but he can be taxed upon the structure or real estate. A railroad company has a franchise to construct and maintain a railroad. Its franchise cannot be taxed, but its road and other structures can be taxed as real estate. The bridge and railroad may not be of any use. to their owners without the franchise pertaining or incident to them, and yet they may be taxed, and, for the purpose of fixing their value, the uses to which they may be subjected must be considered."

The return of the respondents does not give us a very clear view of the relator's road, nor describe the articles and structures, substructures, and superstructures erected upon, under or above, or affixed to the same. The act under which the relator was incorporated, and the acts amendatory thereof, are before us. By the act of incorporation it appears that the relator was incorporated—

"For the purpose of making a good and sufficient road from the corporation line of the city of Albany to the Norman's Kill Bridge including the same, thence running westerly on the Bethlehem Road to the house of Joshua Babcock, Junior, then from the Norman's Kill Bridge southerly to a small bridge south of James Van Rensselaer's including. the same."

Said act also provided that the relator should cause said road to be opened and kept open—

"Four rods wide and which shall be thirty feet between the ditches on each side thereof twenty eight feet whereof shall be faced with broken stone or gravel well compacted together of a depth not less than twelve inches in such a manner as to secure a firm and as near as the materials will admit an even surface rising to the middle by a gradual arch."

Said act also provided—

"That if the said corporation shall not commence their operations within two years and shall not within five years thereafter complete the same according to the intent and meaning of this act, then and in either case this act shall cease and be void and of no effect."

The license of the relator from the Governor, under the privy seal of the state, provided for by the act of incorporation, was conditioned upon a report of three disinterested freeholders, to be appointed by the Governor, showing that said road had been completed in a workmanlike manner, according to the true intent and meaning of the act. Since at least 1809 the relator has been in the sole possession and control of said roadway within said town, and has made all repairs to the same. In view of the provisions of said act, and the fact that the relator commenced taking toll thereon, and has continued the same for about a century, it may fairly be assumed that the relator substantially complied with the articles of incorporation, and that it has erected and maintained tangible property on said roadway. All bridges, culverts, ditches, and prepared roadbed constitute articles and structures upon the soil, of which the relator has the exclusive and continued possession

and control, and every beneficial use and enjoyment, as fully as if it were the owner of the fee of the land upon which such property is used. The relator has an easement in said land, consisting of something more than a franchise. Such easement and tangible property come within the statutory definition of "real property" for the purposes of the assessment and collection of taxes.

The determination of the assessors should be confirmed, without costs. All concur.