# COURT OF ERRORS AND APPEALS,

## JANUARY TERM,

## 1887.

———•———

Patrick Neary, Collector, etc., *Appt. v.* Philadelphia, Wil-
    mington & Baltimore R. R. Co.

    *Construction of Statute—Commutation of Taxes—Taxation of
Roadbed of Railroad.*

The tax laid and collected by the Levy Court in each county for county purposes,
    is nevertheless a State tax, being levied by authority of the State.

Legislative Acts are to be read, understood and interpreted according to the plain
    meaning and ordinary import of the language employed in them.

The roadbed of the P. W. & B. Railroad in this State is "real property" and as such
    subject to taxation for county purposes, unless specifically exempt therefrom by
    Act of Assembly.

In the construction of statutes where any cause of doubt arises, although apparently
    the doubt attaches only to a particular clause, the whole statute is to be taken
    together to arrive at the legislative intent; and if possible such a construction
    is to be made as will avoid any contradiction or inconsistency; and it is the
    duty of the courts, as far as practicable, so to reconcile the different provisions
    as to make the whole Act consistent and harmonious. If this becomes impos-
    sible, then the court must give effect to what was manifestly the intention of the
    Legislature although by so doing it may restrict the meaning or application of
    general words.

It is the meaning and intention of the Act of April 11, 1873 (Laws of Delaware,
    Vol. 14, page 339) that the sums stated therein, when paid by the Philadelphia,
    Wilmington & Baltimore Railroad Company to the State Treasurer, should be
    in lieu of all taxes which might thereafter become due from said company in
    each year under all laws of this State subjecting said company to taxation for
    the benefit of the State or any part of it; including taxation upon its roadbed
    or right of way in a county for county purposes under the general law of the
    State.

*(March 9, 1887.)*

APPEAL from a decree of the Court of Chancery, in favor of complainant in a bill in equity to restrain the collection of taxes assessed against complainant. *Affirmed.*

In the Court below, SAULSBURY, CHANCELLOR, delivered the following opinion:

It is stated in the bill, and admitted by the answer filed in this cause, that so much of the road bed of the main line of railroad and the several sidings and branches thereof, belonging to and operated by the complainant, as is located within the territorial limits of the second or northern district of Wilmington Hundred, has been assessed for county purposes for the year 1885, at a valuation of $54,282, and that certain real estate within the said district belonging to the said Corporation has likewise been assessed for like purposes, for the same year, at a valuation of $700.

The Levy Court of New Castle County has laid and apportioned a tax upon the said assessments as follows: a tax at the rate of twelve cents upon every $100 thereof, as and for the poor tax; and a tax at the rate of thirty-eight cents upon every $100 thereof, as and for a county tax, making the aggregate a tax at the rate of fifty cents upon every $100 of the said assessment.

The aggregate amount of the taxes so laid and apportioned as aforesaid is $279.55, and whereof $271.41 are rated and apportioned upon the sum of $54,282, the valuation of the road bed or right of way; and $8.04 are rated and apportioned upon the sum of $700, the valuation on certain real estate of the complainant located within said collection district, not being a part of or connected with the said road bed or right of way.

The complainant seeks to enjoin the collection of said taxes, by the defendant, collector of said collection district, upon two grounds: 1, That by the payment of a gross annual sum, it is expressly exempted from all other taxes until the Legislature shall otherwise direct; and 2, That as to so much of the said tax as is assessed upon a valuation of its road bed, there is no authority of law for such assessment.

The second ground, in my opinion, is untenable; and I decline to adopt the rulings in the cases cited from the Massachusetts

and Pennsylvania Reports upon this subject, as properly applicable in this State. Numerous contrary decisions are to be found in the reports of other States, and more consonant with our own laws applicable to this subject.

By section 1, chapter 11, of our Code, it is provided that "All real and personal property not belonging to this State or the United States, or any county, church, religious society, college or school, or to any corporation for charitable uses shall be liable to taxation and assessment for public purposes."

The road bed of the complainant is real property and does not come within any of the exceptions contained in chapter 11 of the Code, and is liable to taxation and assessment for public purposes, unless exempted by the provisions of some other Act of the General Assembly of this State.

And this brings me to the consideration of the true interpretation of the Act of April 11, 1873.

That Act is entitled "An Act Relating to the Taxes of the Philadelphia, Wilmington & Baltimore Railroad Company."

The first section is as follows: "That the treasurer of the State be, and he is hereby, authorized and directed to accept and receive from the Philadelphia, Wilmington & Baltimore Railroad Company, in the year of our Lord, 1873, and in each and every year thereafter, until otherwise directed by the Legislature, the annual sum of $27,000, to be paid in equal quarterly payments, on the first day of July, October, January and April of each year, the first payment to be made on the first day of July next, in lieu of all taxes which may hereafter become due from said Company in each year, as aforesaid, under any and all laws of this State, except such taxes as may become due under the provisions of an Act entitled 'An Act to Raise Revenue for This State,' passed August 11, 1864."

By the second section it is provided that "Upon the payment by the said Philadelphia, Wilmington & Baltimore Railroad Company, to the treasurer of the State, of the said sum of $27,000 in equal quarterly payments as aforesaid in any year, it shall be the duty of the said State treasurer, and he is hereby authorized, to execute and deliver to said Company a proper acquittance and discharge from the payment of all taxes due or to become due in the

year for which such payment shall have been made, except the taxes due or to become due under the provisions of the aforesaid Act entitled 'An Act to Raise Revenue for the State,' passed August 11, 1864."

The counsel for the defendant, in his very ingenious and plausible argument, arrived at the conclusion that the taxes for which exemption is given in this Act are special taxes, laid upon the Company by special Acts of General Assembly; and that the Acts referred to in the Act of 1873, are such Acts as by their very terms impose taxes and for State purposes; and he sought confirmation of his construction by a consideration of the provision of the third section of the Act of 1873. That section is as follows:

" That nothing in this Act shall be construed to repeal, modify, or in any manner affect any existing law imposing taxes upon the said Company, otherwise than to suspend a collection of such taxes in any year in which the said Company shall pay to the State treasurer the amount specified in this Act; nor shall the provisions of this Act, or anything herein contained be construed into a contract exempting the said Company from the payment of such taxes as the Legislature of this State may hereafter impose upon said Company."

He contends, also, that the payment by the Company of other taxes strengthens this construction and that the Legislature has given a construction to the same effect by the passage of the Joint Resolution of April 11, 1883.

I cannot agree with the counsel for the defendant in some of these respects, but must interpret the Act of 1873 according to its own provisions. It is true that the State treasurer has not, under his general authority, power to execute and deliver acquittances and discharges from the payment of mere county taxes; but it does not follow that the Legislature of the State may not, by law, except a corporation from the payment of all taxes which may become due from it in each year under any and all laws of the State, or that it may in such Act of exemption except such taxes only as it shall see proper to except.

The Levy Court of a county can levy a tax only by virtue of some law of the State. The collector of a county tax can collect such tax only by virtue of some law of the State; and I think

there can be no doubt that the Legislature may, if it chooses so to do, for any purpose which it may deem beneficial to the State, in consideration of the payment of a sum in gross by any corporation or person, natural or artificial, authorize the acceptance of such sum in gross, in lieu of all taxes which may thereafter become due from said person natural or artificial, under any and all laws of the State, and may except such taxes only as may become due under the provisions of any Act which it may choose to designate.

The only effect which can be given to the third section is that while the sum in gross should be paid to the state treasurer in lieu of all taxes under any and all laws of the State shall be continued to paid to the state treasurer, the payment of other taxes shall be suspended; but that the provisions of the act or anything therein contained shall not be construed into a contract exempting the company from the payment of such taxes as the Legislature might thereafter impose upon the Company.

The Joint Resolution referred to in the argument does not operate as a legislative construction of the Act of 1873, but only as a commutation of taxes due and in arrear, upon the basis therein named. The Joint Resolution referred to was adopted by the Legislature April 19, 1883, more than ten years after the passage of the Act of 1873; and there can be no doubt that the Legislature of 1883 supposed that the Act of April 11, 1873, had reference only to taxes imposed by the Act of April 8, 1869; for in the preamble to the joint resolution, they say:

" *Whereas,* By an Act of the General Assembly, passed at Dover, April 11, 1873, the state treasurer was directed and empowered to receive from the Philadelphia, Wilmington & Baltimore Railroad Company the sum of $27,000 annually in lieu of all taxes against said Company, under the Act of April 8, 1869, by equal quarterly installments; therefore, be it resolved," etc.

I have no doubt it was the intention of the Legislature of 1883 to place all railroad corporations and canal companies of the State upon an equal footing in respect to taxation; for in the fourth resolution they say:

" That when any such company shall have fully complied with and conformed to the requirements of the preceding resolve, the state treasurer shall thereafter accept and receive from each of the

said companies by equal quarterly payments in each year commutation of the taxes under the Act of April 8, 1869, on the basis hereinbefore stipulated."

If they failed to secure this equality it was by interpreting the Act of April 11, 1873, as having particular reference to the Act of April 8, 1869, and not to any and all laws of this State except the Act of August 11, 1864.

The first and second sections, before recited, of the Act of April 11, 1873, are to be interpreted by the clear meaning of the words of the Act as used, and not by conjecture, warranted perhaps by circumstances *dehors* the Act.

If the Legislature had intended to except any taxes other than those which might become due under the provisions of an Act to raise revenue for this State, passed August 11, 1864, it is reasonable to suppose that they would have said so in the Act, and it was their plain duty so to have said.  They have in fact, however, excepted only such taxes as may become due under that Act, and afterwards in the fifth section provided " That if the said Philadelphia, Wilmington & Baltimore Railroad Company may desire to pay to this State a gross sum of $13,000 in lieu of the said tax provided for in said chapter 458, Vol. 12, Laws of Delaware (being the same Act which they had before excepted, passed August 11, 1864), in semi-annual installments on the first day of October and the first day of April in each and every year, it shall be the duty of the state treasurer to receive the said amount from said Company, in lieu of said tax, until otherwise directed by the Legislature of this State.

It is not for the judiciary to limit and restrict the plain and unambiguous language employed by the Legislature in their enactments, but to give to the words used in such enactments, a plain, fair and reasonable construction.  It is for the court to declare the meaning of an Act of the Legislature, and not to usurp the functions of the Legislature by presuming to make law contrary to that made by the law-making power.

I, therefore, decide in this case, that when the Legislature, by the first section of the Act of 1873, declared that the treasurer of the State be and he is hereby authorized and directed to accept and receive from the Philadelphia, Wilmington & Baltimore Railroad

Company in the year of our Lord, 1873, *until otherwise directed by the Legislature,* the annual sum of $27,000, to be paid in equal quarterly payments on the first day of July, October, January and April of each year, the first payment to be made on the first day of July next, in lieu of all taxes which may hereafter become due from said Company in each year as aforesaid, under any and all laws of this State, except such taxes as may become due under the provisions of an Act to raise revenue for this State, passed August 11, 1864, and that the said Company having paid said sum to the said treasurer, according to said Act as appears by the acquittance and discharge of the said state treasurer, filed in this cause, the said Company became and was discharged from the payment of all taxes due in the year for which such payment was made, except the tax due or to become due under the provisions of the Act entitled "An Act to Raise Revenue for This State," passed August 11, 1864, and that when the said Company paid a gross sum of $13,-000 in lieu of the said tax due under the provisions of the aforesaid Act entitled "An Act to Raise Revenue for This State," passed August 11, 1864, such payment operated as an acquittance and discharge in lieu of all taxes under any and all laws of this State.

This opinion is confined to the special matter before me, namely; the tax levied and appropriated by the Levy Court of New Castle County as stated in the bill of complaint in respect to the road bed of the said Company, complainant, and is not to be understood as applying to the other real estated owned by the company, not a part of said road bed as mentioned in said bill.

This limitation I consider proper, because the legislation upon this subject must have a reasonable and a fair construction; and it is not to be presumed that the Legislature intended that the Company should be exempted from taxation in respect to property which it might become possessed of as owner and not necessarily incident to the right of operating its railroad. If the Company became the owner of property disconnected with its road and its operation, which property would be taxable if owned by natural persons—would be subject to taxation—it is not to be presumed that it was the intention of the Legislature to exempt such prop-

erty from liability to taxation simply for the reason that the complainant became the purchaser and owner thereof.

Before the counsel in the cause proceeded in their arguments I intimated to them that I should dissolve the preliminary injunction heretofore awarded and dismiss the bill, unless the case was brought under some recognized head of equity jurisprudence, as where there would otherwise be a cloud upon the title or a multiplicity of suits or any irreparable injury.

The ordinary remedies in the case of taxes illegally assessed and levied are an action at law after a compulsory payment either of trespass against the collecting officer, or of assumptsit against such officer or the public corporation to which the amount has been paid.

These remedies, says *Pierce on Railroads*, 488, are ordinarily ample and do not involve the public embarrassments incident to the intervention of equity in such cases.

Equity will not therefore enjoin the collection of a tax alleged to be illegal, where there is an adequate remedy at law. It will not interfere by its preventive process on account of mere irregularities, hardship and injustice in the assessment, or errors or excess in valuation.

It would be impossible, if I were to attempt it, to reconcile the various and conflicting decisions which have been made by the courts in the different States upon the subject of equitable jurisdiction in such cases.

This want of uniformity of decisions in this country has arisen from the want of distinct equitable tribunals to adjudicate such questions and from the blending of legal and equitable powers in the same tribunals.

The principles I have announced upon this subject will govern my actions whenever similar questions shall arise before me.

The solicitors for the parties respectively have filed among the papers in the cause an agreement which is in the following words: " It is agreed and understood that there are divers other taxes assessed against the corporation complainant, and other corporations owning like property in the County of New Castle, in the hands of several other collectors in the said County of New Castle for collection, and that in order to avoid a multiplicity of suits, and prevent un-

reasonable litigation, it has been agreed that these facts are to be taken to be admitted in this case with the like effect as if the same had been stated in the bill of complaint, and admitted by the answer. And it is also agreed and understood and so stipulated that this cause shall be considered just as though all the parties who are in like case as the complainant and defendant had been parties thereto."

I have not given any weight to the suggestion made by the counsel for the complainant: that the tax imposed would affect commerce among the States, and impede the transit of persons and property from one State to another. It does this in the language of Mr. Justice Fields in the case of *Minot v. Phila. etc. R. R. Co.*, 18 Wall., 232 [85 U. S. bk. 21, L. ed. 896], "just in the same way, and in no other, that taxation of any kind necessarily increases the expenses attendant upon the use or possession of the thing taxed. That taxation produces this result of itself constitutes no objection to its constitutionality." "As was very justly observed," he remarks, "by this court in a recent case, 15 Wall., 293 [82 U. S. bk. 21, L. ed. 167], 'every tax upon personal property, or upon occupations, business or franchises, affects more or less the subjects and the operation of commerce. Yet it is not everything that affects commerce that amounts to a regulation of it, within the meaning of the Constitution.' The exercise of the authority which every State possesses to tax its corporations and all their property, real and personal, and their franchises, and to graduate a tax upon the corporations according to their business or income, or the value of their property, when this is not done by discriminating against rights held in other States, and the tax is not on imports, exports or tonnage, or transportation to other States, cannot be regarded as conflicting with any constitutional power of Congress."

The agreement referred to by counsel having been filed, and having for that reason taken jurisdiction of the cause, I shall, for the reasons before stated, decree that the preliminary injunction heretofore granted restraining the defendant from collecting the sum of $271.41 rated and apportioned upon the sum of $54,282 the valuation of the road bed be made perpetual, and that the said preliminary injunction be dissolved as to the sum of $8.04 rated and apportioned upon the sum of $700, the valuation on the other

real estate of the complainant located within the collection district mentioned in said bill; and it is ordered that the parties complainant and respondent, each pay one-half of the costs in this cause within three months, or attachment.

The case was heard in this court at the January Term, 1887, before COMEGYS, CH. J., WOOTEN,* HOUSTON and GRUBB, JJ.

The Act in question is fully set out in the opinion of HOUSTON, J.

*John H. Rodney* and *Edward G. Bradford,* for appellant:

This case involves only two main questions, viz.:

1. Assuming that the real estate of the corporation respondent is liable to assessment and taxation under the general laws regulating county taxation, in the absence of any specific statute or statutes exempting the same therefrom, is there any such statute or exemption?

2. If there is no such statute, is there any general rule or principle of law exempting either the whole or any part of the real estate of the corporation respondent from such taxation?

The same rule applicable to the construction of a contract applies to a statute. It should be considered as a whole and the real intent of the Legislature thus ascertained.

Sedg. Stat. Const. Law, § 238.

Further, it is a well established principle of the interpretation of laws exempting from taxation, that any doubts as to the scope of the enactments should be resolved in favor of the taxing power, as the surrender of that power should be by clear, unambiguous terms, admitting of no reasonable construction consistent with the reservation of the power.

Cooley, Tax., 146; Sedg. Stat. & Const. Law, § 344; *Delaware R. R. Tax,* 18 Wall., 206, 225 (85 U. S. bk. 21, L. ed. 888, 894); *Philadelphia, etc., R. R. Co. v. Maryland,* 10 How., 376, 393 (51 U. S. bk. 13, L. ed., 461, 468); *Bailey v. Magwire,* 22 Wall., 215, 226 (89 U. S. bk. 22, L. ed., 850, 852); *Southwestern*

---

* Hon. Edward Wootten died after the argument and before the decision of this case.

*R. R. Co. v. Wright,* and *Vicksburg R. R. Co. v. Dennis,* 116 U. S., 236, 251, 665, 667 (Bk. 29, L. ed., 628, 770.)

Section 3 of the Exemption Act of April 11, 1873, provides that nothing in the Act shall be construed to repeal, modify, or in any manner affect any existing law imposing taxes upon the said Company, otherwise than to suspend a collection of said taxes, in any year in which the Company shoud pay the $27,000; nor should that Act be construed into a contract exempting the said Company from the payment of such taxes as the Legislature of this State may hereafter impose upon said Company.

Thus, the exemption from taxation which the Company can lawfully claim is restricted to law or laws existing April 11, 1873, and "imposing taxes upon the said Company." How, then, is it possible that the exemption can extend to county taxation of real estate for county purposes?

Section 1, chapter 11, Rev. Code, 1874, provides, as heretofore shown, that "All real and personal property, not belonging to this State, or the United States, or any county, church, religious society, college or school, or to any corporation for charitable uses shall be liable to taxation and assessment for public purposes."

The law does not even provide that real estate shall be taxed. It authorizes taxation, but imposes no tax.

Rev. Code, 63, chap. 8, § 18.

Further, it is by law the duty of the Levy Court on or before the first Tuesday of April in every year to cause to be issued to the collector of each hundred a duplicate of the assessment list of the hundred of which he is collector, with a warrant for the collection of taxes.

Rev. Code, chap. 8, § 18.

It is by law the duty of the collector to pay to the county treasurer the county tax as follows: one-third by the first day of July; one other third by the first day of October; and the residue, after deducting comissions and delinquencies, by the first Tuesday of February next after his appointment.

Rev. Code, chap. 12, § 7.

The Levy Court has by law a discretion vested in it to "order payment of all or any of said taxes, at an earlier day than those appointed."

Rev. Code, chap. 12, § 8.

It is impossible to harmonize the operation of the Act of 1873, upon the construction contended for on behalf of the 'Company with the provisions of law above referred to; for under the above provisions the collector has full power to collect from the Company before July 1, the whole tax assessed against it, and may be directed to do so by the Levy Court.

Yet, under the Act of 1873 the Railroad Company need not elect until July 1, to pay the said $27,000 or any part thereof to the State treasurer. Further, as appears above, it is by law the duty of the collector to pay to the county treasurer the county tax in full by the first Tuesday of February next after his appointment at the latest. It is also the duty of the collector, on the first Tuesday of March next after the date of his warrant, to "render to the Levy Court a true account of all taxes it was his duty to collect, and of all payments made, and of all delinquents."

Rev. Code, chap. 12, § 10.

And the collector is expressly forbidden to collect or receive any tax allowed as delinquent; but the same shall be extinguished, it being provided that the delinquent list shall be settled and allowed at the March meeting of the Levy Court.

Rev. Code, chap. 12, § 18, chap. 8, § 21.

Yet the last installment of the $27,000 does not become due and payable until April 1, or after the time limited for the allowance of the delinquent list has expired; And until the last installment has been paid non constat that there will be commutation of taxes; for it requires the payment of the full sum of $27,000 to work that result.

It is submitted that, on the ground of consequences, the construction contended for on behalf of the Railroad Company should be rejected.

U. S. v. Kirby, 7 Wall., 482, 486 (74 U. S. bk. 19, L. ed., 278, 280.)

The legislation of this State furnishes means outside of that Act for gathering its true intent, such as the Resolution of April 19, 1883. It is a well settled rule of construction that statutes in pari materia are to be construed together, in order to ascertain the legislative intent.

Sedg, Stat. & Const. Law, 247, 252, 253 ; Cooley, Tax. 2 ; *U. S. v. Freeman,* 3 How., 556, 565 (44 U. S. bk. 11, L. ed., 724, 728.)

*George V. Massey,* for appellee :

The power of the Legislature to exempt corporations and their property from taxation, in whole or in part, for limited periods or permanently, cannot now be seriously questioned.

*Delaware R. R. Tax,* 18 Wall., 225 (85 U. S. bk. 21, L. ed., 894) ; *State v. Bank of Smyrna,* 2 Houst., 99 ; *Home for the Friendless v. Rouse,* 8 Wall., 430 (75 U. S. bk. 19, L. ed., 495.)

In the construction of statutes it is a rule of universal application that effect must be given to the words used by the Legislature, if there is no uncertainty or ambiguity in their meaning.

*Dwar. Stat.,* 703 ; *Priestman v. U. S.,* 4 Dall., 30 (4 U. S. bk. 1, L. ed., 728) ; *U. S. v. Fisher,* 2 Cranch, 399 (6 U. S. bk. 2, L. ed., 317) ; *Farrel Foundry v. Dart,* 26 Conn., 376 ; *Pearce v. Atwood,* 13 Mass., 343 ; *People v. Utica Ins. Co.,* 15 Johns., 394 ; *Allen v. Mut. Fire Ins. Co.,* 2 Md., 111 ; *Opinions of the Juitices,* 7 Mass., 524 ; *Parkinson v. State,* 14 Md., 184 ; *Green v. Weller,* 32 Miss., 650 ; *Capelle v. Baker,* 3 Houst., 354 ; *Cooley, Const. Lim.,* 72 and notes.

It is only when a statute is ambiguous in its terms that the courts exercise the power of so controlling its language as to give effect to what they may suppose to have been the intention of the law makers.

*Holbrook v. Holbrook,* 1 Pick., 250 ; *Bidwell v. W|hitaker,* 1 Mich., 469 ; *Bradbury v. Wagenhorst,* 54 Pa., 180 ; *Rich v. Keyser,* 54 Pa., 86.

While it is admitted that the courts, in construing a statute where there is ambiguity in its terms, will endeavor to ascertain and give effect to the legislative intent, it is contended that such intent must be found in the statute itself.

*Tynan v. Walker,* 35 Cal., 634 ; *Ezekiel v. Dixon,* 3 Ga., 146 ; *Barker v. Esty,* 19 Vt., 138–9 ; Cooley, Const. Lim., 72 and notes ; *Coffin v. Rich,* 45 Maine, 511 ; *Bosley v. Mattingly,* 14 B. Mon., 90 ; *Water Comrs. v. Brewster,* 13 Vroom, 129 ; *Rudderow v. West*

*Jersey Ferry Co.*, 2 Vroom, 512; *State v. Berry*, 2 Harr. (N. J.), 81; *Sturgis v. Crowninshield*, 4 Wheat., 122 (17 U. S. bk. 4, L. ed., 529.)

It is only the intent of the particular Legislature which enacts the statute that is to govern the courts in the construction thereof. The opinion of a subsequent Legislature upon the meaning of the statute is entitled to no more weight than that of the same men in their private capacity.

*Bingham v. Supervisors*, 8 Minn., 448; *Dash v. Van Kleek*, 7 Johns., 507.

Any attempt to restrict the general terms of the Act of April 11, 1873, to taxes which appellee is pleased to designate as State taxes cannot be successfully maintained, because all taxes, whether devoted to State or county purposes, are, nevertheless, State taxes, in that they are assessed and collected by authority of the State, and are only apportioned and subdivided for the support and maintenance of the Government in all its several departments.

*Camden, etc., R. R. Co. v. Hillegas*, and *Camden, etc., R. R. Co. v. Comrs. of Appeal*, 3 Harr. (N. J.), 12, 13, 71–73.

In the light of its charter, the *roadbed, or right of way* of the complainant Corporation, is analogous to a *turnpike*, or the bed of a *canal* with its appurtenances. That as such *roadway* forms part of a continuous line of railroads between the States of Pennsylvania and Maryland, to the formation and establishment of which this State has given its sanction and assent, it constitutes a means and medium of inter-State commerce; and the imposition of a tax upon it specifically is *a regulation of commerce between the States.*

*Commonwealth v. Wilkinson*, 16 Pick., 175; *Inhabitants of Worcester v. Western Railroad*, 4 Metcalf, 564; *Proprietors of Meeting House v. Lowell*, 1 Metcalf, 538; *Lehigh Coal and Nav. Co. v. Northampton Co.*, 8 Wat. & Serg., 334; *Railroad v. Berks Co.*, 6 Barr, 70; *Schuylkill Nav. Co. Berks Co.*, 1 Jones, 202; *Delaware and Hudson Canal Co. v. Wayne Co.*, 351; *West Chester Gas Co. v. Chester Co.*, 6 Casey, 232; *Carbon Iron Co. v. Carbon Co.*, 3 Wright, 251; *Cape May and Millville Railroad Co. v. Collector Middle Township*, 9 Vroom, 270.

HOUSTON, J., delivered the following opinion:

Notwithstanding the elaborate effort of the learned counsel for the appellant to raise a doubt as to the meaning and intention of the Legislature in passing the Act of April 11, 1873, entitled "An Act Relating to the Taxes of the Philadelphia, Wilmington & Baltimore Railroad Company" (Rev. Code, 44), and the long array of authorities cited in support of their contention that it could not have been intended by the Legislature to have any relation to a county tax levied, assessed and imposed by the Levy Court of New Castle County, upon the roadbed or right of way of the Company located within the northern or second collection district of Wilmington Hundred, in that county, or to any other tax than a State tax, or State taxes specifically imposed as such upon the Company by some existing law on the subject, I must confess that I have been utterly unable to discover any reasonable ground whatever for such a doubt on a perusal of the plain and simple words of the Act itself.

All written contracts, as well as legislative Acts, are to be read, understood and interpreted according to the plain meaning and ordinary import of the language employed in them. One leading principle of construction is to carry out the intention of the authors of or parties to the instrument or agreement, so far as it can be done without infringing upon any law of superior binding force. In regard to cases where this intention is clearly expressed there is little room for variety of construction; and it is mainly in cases where the intention is indistinctly disclosed, although fairly presumed to exist in the minds of the parties, that any liberty of construction exists.

Words, if of common use, are to be taken in their natural, plain, obvious and ordinary signification; but if technical words are used, they are to be taken in a technical sense, unless a contrary intention clearly appears in either case from the context. All instruments and agreements are to be so construed as to give effect to the whole or as large a portion as possible of the instrument or agreement. 1 Bouv. Law Dict., 337, 338.

With these rules of construction before us, turning to the Act in question, and assuming as the counsel for the appellant have, that the real estate of the corporation respondent is liable to assess-

ment and taxation, under the general laws regulating county taxation, in the absence of any specific statute or statutes exempting the same therefrom, is there any difficulty in promptly answering in the affirmative the question formally propounded by them in the first paragraph of their printed brief? I must say, with all due respect to them, there is none whatever in my opinion.

The first Act of the Legislature, that of Chapter 11, Rev. Code, 84, subjecting the real and personal estate of the Corporation to taxation and assessment for public purposes, was the general statute for that purpose, and was in force when the Company was incorporated and its railroad was constructed and put in operation under its charter in and across this State. The other three Acts referred to passed prior to the particular Act now in question, that of April 11, 1873, entitled "An Act Relating to the Taxes of the Philadelphia, Wilmington & Baltimore Railroad Company" (Rev. Code, 44), were passed long after the general statute first before referred to, and were as follows: the Act of August 11, 1864, entitled "An Act to Raise Revenue for this State" (Rev. Code, 29, 30), imposing a passenger tax of ten cents for each passenger carried by the Company; the Act of April 8, 1869, entitled "An Act Taxing Railroad and Canal Companies in this State," which required them to pay to the State, in addition to the taxes already imposed on such companies by the laws of the State, an annual tax upon the net earnings or income received by them from all sources during the preceding year, and a tax upon their rolling stock, and also a tax upon the actual cash value of the capital stock of such companies (Rev. Code, 41); and chapter 7 of the Revised Code, which imposed an annual tax of one quarter of 1 per cent upon the capital of the Company.

Such were the statutes and such were the various taxes, all told, to which the corporation respondent was subject when the Act of April 11, 1873, relating to the taxes of that corporation, was passed on that day. It is as follows:

"Sec. 1. That the Treasurer of the State be and he is hereby authorized and directed to accept and receive from the Philadelphia, Wilmington & Baltimore Railroad Company in the year of our Lord 1873, and in each and every year thereafter, until otherwise directed by the Legislature, the annual sum of $27,000, to be

paid in equal quarterly payments, on the first day of July, October, January and April, of each year, the first payment to be made on the first day of July following, in lieu of all taxes which may hereafter become due from said Company in each year, as aforesaid, under any and all laws of this State, except such taxes as may become due under provisions of an Act entitled ' An Act to Raise Revenue for this State,' passed August 11, 1864."

"Sec. 2. That upon the payment by the said Philadelphia, Wilmington & Baltimore Railroad Company to the Treasurer of the State of the said sum of $27,000 in equal quarterly payments as aforesaid, in any year, it shall be the duty of the said state treasurer, and he is hereby authorized to execute and deliver to said Company a proper acquittance and discharge from the payment of all taxes due or to become due in the year for which such payment shall have been made, except the tax due or to become due under the provisions of the aforesaid Act entitled ' An Act to Raise Revenue for this State,' passed August 11, 1864."

" Sec. 3. That nothing in this Act shall be construed to repeal, modify or in any manner affect any existing law imposing taxes upon the said Company, otherwise than to suspend a collection of said taxes in any year in which the said Company shall pay to the state treasurer the amount specified in this Act; nor shall the provisions of this Act, or anything herein contained, be construed into a contract exempting the said Company from the payment of such taxes as the Legislature of this State may hereafter impose upon said Company."

" Sec. 4. That if the said Philadelphia, Wilmington & Baltimore Railroad Company, or any other railroad company in this State shall either as the operator of its own railroad or railroads, or as lines of other railroads within this State, charge and receive a greater rate per mile for the carriage of passengers (except so far as the same may be increased to the amount of the tax annually paid under the provisions of chapter 458, Vol. 12 of the Laws of Delaware) or for the carriage or transportation of goods, wares or merchandise or other property whatsoever from place to place within this State, or from a place within the State to a place without the State, than is charged by such company for the carriage of passengers and the transportation of property or freight for like

distances or per mile from places without the State to places within the State, or from places without the State through the State to other places without the State, the person or persons paying such charges, either as fare or freight, shall be entitled to recover from such company so charging and receiving the same a sum tenfold the amount of the money so paid, to be recovered in an action of debt or assumpsit, as like amounts are now recovered by law."

" Sec. 5. That if the said Philadelphia, Wilmington & Baltimore Railroad Company may desire to pay to this State a gross sum of $13,000 in lieu of the said tax provided for in the said chapter 458, Volume 12, Laws of Delaware, in semi-annual installments, on the first day of October and the first day of April, in each and every year, it shall be the duty of the State treasurer to receive the said amount from the said Company in lieu of said tax until otherwise directed by the Legislature of this State ; but nothing in this section shall be construed to repeal, modify, or in any manner affect the provisions of said chapter 458, Volume 12, Laws of Delaware, otherwise than to suspend the collection of said tax for any year in which the said Company shall pay the gross amount aforesaid in the manner aforesaid in lieu of said tax ; and nothing herein shall be construed as a contract exempting the said Company from such taxation as may hereafter be imposed by law."

Applying the leading principle of construction before stated (which is, to carry out the intention of the authors of or parties to the instrument or agreement, and that where the intention is clearly expressed, there is little room for a variety of construction, and that the words used, if of common use, are to be taken in their natural, plain, obvious and ordinary signification) to the provisions of the Act in question, I have been unable to discover any room for a doubt as to the intention of the authors of and parties to it so clearly expressed in the plain and common words used in it.

The plain and direct import of them is that the State treasurer is authorized and directed by the Legislature to accept and receive from the other party, the Railroad Company, in the year 1873, and in each year thereafter, until otherwise directed by the Legislature, the annual sum of $27,000, to be paid in equal quarterly payments on the first day of July, October, January and April of each year,

the first payment to be made on the first day of July next, in lieu of all taxes which may hereafter become due from said Company in each year, as aforesaid, under any and all laws of this State, except such taxes as may become due under the provisions of an Act entitled " An Act to Raise Revenue for This State," passed August 11, 1864.

This is the first section of the Act and substantially comprises, in perfectly clear and explicit terms, the *aggregatio mentium* of the parties to it; while the second section of it, without varying or changing it in any particular, actually repeats and reaffirms it by providing that upon the payment by the said Railroad Company to the State treasurer of the said sum of $27,000 in equal quarterly payments, as aforesaid, in any year, it shall be the duty of the said State treasurer, and he is hereby authorized to execute and deliver to said Company a proper acquittance and discharge from the payment of all taxes due or to become due in the year for which such payment shall have been made except the tax due or to become due under the provisions of the aforesaid Act entitled " An Act to Raise Revenue for this State," passed August 11, 1864.

And could any form of words or mode of expression be devised to declare in more explicit and unequivocal terms when taken in their natural, plain, obvious and ordinary signification, the meaning and intention of the Act, and of both of the parties to the agreement made and concluded by it, to be that the said sum of $27,000, when so paid as aforesaid by the said Company to the State treasurer in the year 1873, commencing the quarterly payments on the first day of July in that year, and in each and every year thereafter, until he should be otherwise directed by the Legislature in regard thereto, should be in lieu of, or in exchange for, all taxes which might thereafter become due from the said Company in each and every year, as aforesaid, under any and all laws of this State, except such taxes as should become due under the provisions of the Act, entitled " An Act to Raise Revenue for this State," passed August 11, 1864.

And here I may add that the special exception of this Act from the operation of the agreement only the more conclusively shows that it was the intention of the statute in question and of the parties to the agreement made and enacted into a law for the

government of both the State and the Company, in relation to the subject matter of it, as provided for in it, that every other tax law to which the Company was then subject or might thereafter be attempted to be made subject, should be included in and covered by the agreement, according to the maxim of law, *exceptio probat regulam de rebus non exceptis*—An exception proves the rule, concerning things not excepted—and the further maxim on the same subject, *Exceptio quæ firmat legem, exponit legem*—An exception which confirms, expounds the law.

The main object of the statute, as well as the express words of it in all the provisions of it relating to that object, was to authorize the Company, during the will and pleasure of the Legislature, to pay to the State treasurer thereafter annually the sum of $27,000 as therein stipulated and agreed upon, in lieu of, and in commutation of, all taxes which might thereafter become due from said Company in each year as aforesaid under any and all laws of this State, except such taxes as might become due under the said Act passed August 11, 1864; and furthermore under the fifth section of it to authorize the said Company, if it should thereafter desire to pay to the State a gross sum of $13,000 in lieu of the said tax provided for in said excepted Act passed August 11, 1864, in semi-annual installments, on the first day of October and the first day of April in each and every year, to do so; and to make it the duty of the State treasurer to receive the said amount from the said Company in lieu of said tax until otherwise directed by the Legislature, and which, with the said sum of $27,000, before mentioned in the first and second sections of the statute, would amount to $40,000 per annum; and which sum of $40,000 when paid in any year thereafter as therein provided for, I am also of the opinion was as clearly meant and intended by the plain and unequivocal words of the statute to be in lieu and satisfaction of all taxes which might thereafter become due from the said Company in any year as aforesaid, under any and all laws of the State subjecting it to taxation for the benefit of the State or any part of it.

And as the road bed or right of way of the Company in the Northern or Second Collection District of Wilmington Hundred, New Castle County, was then subject, as real property, to county

assessment and taxation for county purposes under the general law of the State providing for the annual assessment and collection of county taxes, any tax thereafter assessed under it upon the road bed of the Company, as the tax in question in this case was, would be clearly subject, I think, to the provisions of the Act entitled " An Act Relating to the Taxes of the Philadelphia, Wilmington & Baltimore Railroad Company," passed April 11, 1873.

The language of the Act is so broad and comprehensive, expressly declaring that the two sums of $27,000 and $13,000 when paid in any year to the State treasurer by the Company as authorized and provided for in it, should be in lieu of all taxes which might thereafter become due from the Company under any and all laws of the State, that I can find no warrant in the words of it anywhere for the construction contended for by the learned counsel for the appellant that the provisions of it were not intended to apply to a county tax assessed under the general statute and payable to a collector of county taxes, or to any other law than such as specifically imposed, like the other three Acts referred to in the case, a State tax upon the Company to be paid to the State treasurer; first, on the ground, as they earnestly contended, that each of those three Acts was a law of that specific character; and secondly, on the ground, as they also contended, that the words of the third section of the Act required this construction, inasmuch as it provides as follows :

" That nothing in this Act shall be construed to repeal, modify, or in any manner affect any existing law imposing taxes upon said Company, otherwise than to suspend a collection of said taxes in any year in which the said Company shall pay to the State treasurer the amount specified in this Act, nor shall the provisions of this Act or anything herein contained be construed into a contract exempting the said Company from the payment of such taxes as the Legislature of this State may hereafter impose upon said Company."

It is upon the meaning which counsel for appellant choose to give to the word " imposing " and the word " impose " taxes upon the said Company, as they occur in the first three and the last two lines of the section, that they have sought to limit the plain and obvious meaning of the words in the two preceding sections (which

were framed for the direct purpose of declaring and expressly enacting that the State treasurer should accept from the said Company and receipt to it for the said sum specified in them, and when paid to him by the said Company as provided for therein, it should be in lieu of all taxes which should thereafter become due from said Company under any and all laws of this State, except the tax due or to become due under the particular Act therein expressly excepted), by a labored argument to show that the incidental employment of the words "imposing" and "impose" in the third section of it, which was framed and enacted for another and entirely different purpose, could not be intended to apply to and include the general law of the State for the assessment of county taxes, or the tax assessed under it in this case against the road bed of the Company in the collection district mentioned, because it was not a law in which the State imposed, as in the other three Acts specially named in it, the tax upon the Company, but like all county taxes it was imposed by the levy court of the county.

Without entering into any nice or hypercritical consideration of the signification of the word, it is sufficient to say that the Latin word *impono*, from which it is derived, was as generally used in that tongue among the ancient Romans to mean to lay or levy a tax, as the derivative of it in our tongue has since been used in this country and among all English speaking people, to signify the same thing; and from it is also derived the word *impost* in our language, which has scarcely had any other meaning than a tax, however assessed, levied or collected by a government, although it has by usage acquired a more restricted meaning and is now confined in its application to taxes or duties imposed by Government on imports. But any tax authorized by the Legislature of the State, for whatever purpose and however ascertained and fixed in its amount, or which is assessed and collected by the instrumentality provided for it in the Act, is in effect imposed by law on the person who is bound to pay it, whether it be laid directly or indirectly upon him; and it is in accordance with both correct and common usage to so employ the word.

And if the word in this case or in any other admits of two senses or either of the meanings contended for, it is a well settled principle of construction that the meaning which will give effect to

the intention of the parties is preferred to that which will destroy it; more especially where the words themselves, abstractly, may admit of either meaning. *Pugh v. Duke of Leeds,* 2 Cowp. 714.

It was in the power of the Legislature to enter into such an agreement with the Company to accept thereafter from year to year so long as the Legislature should see proper to do so, the said sum of $40,000 annually, and the Company should continue to pay it yearly as provided for in the Act, in lieu of all taxes to be paid by it under any and all laws of the State, and as the Legislature must have been satisfied that it would constitute a fair and just equivalent therefor, I do not think that either the validity or the wisdom of it can be properly objected to, because the whole of the substituted sum is to be paid into the state treasury for the use of the State, in lieu of and to the total exclusion of any county tax on any part of the road bed in New Castle County for the benefit of that county under the general law of the State for the assessment of taxes for county purposes; for the extent to which the county is relieved thereby of State taxes, it is directly benefited by the substitution; while the Act is so framed and expressed that as soon as it ceases to be a fair equivalent for all the taxes to be yearly remitted and released to the Company in lieu of it, the Legislature may terminate the agreement.

I am, therefore, of the opinion that the decree of the Chancellor should be affirmed.

GRUBB, J., concurring:

The question presented for decision upon this appeal is whether or not the decree of the Chancellor is erroneous in so far as it perpetually restrains and enjoins the collection by the appellant, defendant below, of the sum of $271.41, rated and apportioned for the year 1885, upon the valuation of the road bed, or right of way of the appellee, complainant below, for the purposes of county taxation.

The proper determination of this question raises two inquiries, viz:

First, Is there authority of law for the assessment and collection, for the purposes of county taxation, of the said sums rated and apportioned upon the valuation of the said road bed or right

of way, in the absence of any principle of law or specific statute exempting the same therefrom ?

Second, If so, is there any principle of law or statute exempting the same therefrom ?

There is no authority in law for the assessment and collection of any sum for the purposes of county taxation, upon the road bed of the said appellee, unless the said road bed be included within the terms and operation of the following provisions of chapter 11 of the amended Code, p. 84, viz.:

"Sec. 1. All real and personal property not belonging to this State, or the United States, or any county, church, religious society, college or school, or to any corporation for charitable uses, shall be liable to taxation for public purposes."

That the said road bed is included within the terms and operation of said section 1, and is to be deemed "real property" within the meaning of that term, as used in said section, must be conceded in view of the undeniable weight of authority in this country. *Farmers Loan & T. Co. v. Hendrickson,* 25 Barb., 493 ; *People v. Brandsley,* 52 Barb., 107 ; *People v. Cassidy,* 46 N. Y., 46 ; *Smith v. Mayor,* 68 N.Y., 555 ; *People v. Comrs.,* 19 Hun., 460 ; *New Haven, v. Fair Haven,* 38 Conn., 430 ; *Ill. Cent. R. R. Co. v. McLean,* 17 Ill., 296 ; *Providence etc. R. R. Co. v. Wright,* 2 R. I., 459 ; *Philadelphia etc. R. R. Co. v. Bayless,* 2 Gill, 355 ; *Orange etc. R. R. Co. v. Alexandria,* 17 Gratt., 177.

The Massachusetts and Pennsylvania doctrines that railways are exempt from taxation, upon the ground that they are public works, established by public authority, like canals, turnpikes and highways in those States, is not recognized elsewhere, and should not now be adopted in this State; and cannot properly be in the present case. The said road bed, therefore, being real estate, and as such, liable to taxation for public purposes under the foregoing provisions of section 1, chap. 11, it has been suggested that the imposition of a tax upon it specifically is an unlawful regulation of commerce between the States. This objection was but slightly urged and cannot be sustained since the decisive rulings of the Federal Supreme Court to the contrary in *Delaware Railroad Tax,* 18 Wall. 206 [85 U. S. bk. 21, L. ed. 888], and kindred cases.

It therefore follows that the said road bed of the complainant

below is liable to the collection, by the appellant, of the said sum rated below and apportioned upon the valuation thereof as aforesaid, for the purposes of county taxation, unless there is some principle of law or specific statute, exempting said road bed therefrom.

Strictly public corporations and the governmental divisions of a State are impliedly exempted from taxation with respect to their public property, although its taxation is within the power of the Legislature, because it cannot be presumed that the Legislature intended (in the absence of express legislation so prescribing) that the public should tax itself to raise money to pay over to itself. But this principle of implied exemption does not apply to the case of a business corporation like the appellee, in which the State has no proprietary interest, and whose property is owned and controlled by private individuals for private profit. *Philadelphia etc. R. R. Co. v. Bowers*, 4 Houst., 506, 530 ; *Delaware Railroad Tax, supra.*

Accordingly, the said road bed of the appellee does not appear to be exempt from the collection of the said sum rated and apportioned upon its valuation as aforesaid, unless there is some specific statute exempting it therefrom. The said appellee contends that it is exempted and discharged from the collection thereof for the purpose of county as well as state taxation, under and by virtue of the provisions of the Act entitled " An Act relating to the Taxes of the Philadelphia, Wilmington & Baltimore Railroad Company " (passed at Dover, April 11, 1873, 14 Del. Laws, p. 339 ; Amended Code, p. 44), the said appellee having duly paid the prescribed commutation for the said year, 1885, as required by said Act.

The appellant having denied this, the duty of construing said Act is devolved upon this court. Upon examination of this Act it will be found that it is a statute which does not itself impose any tax, but is entirely separate and disconnected from any Act imposing or prescribing a tax and enacted in the exercise of the taxing power. On the contrary it provides for the satisfaction and discharge, upon the payment by the appellee of the commutation money therein specified, of all taxes due or to become due in the year for which such payments shall be made under any and all laws of this State then already enacted in the exercise of the taxing power, except the tax due or to become under the Passenger Tax Act, passed August

11, 1864, for the satisfaction and discharge of which latter tax a further sum of commutation money is prescribed by section 5 of the aforesaid Act of April 11, 1873.

It will be further observed that nothing in said Act of 1873, specifically refers to, or expressly confines its operation to any particular Act or Acts providing for the raising of revenue for the use of the State exclusively. On the contrary sections 1 and 2 of said Act expressly provide that, until the Legislature shall otherwise direct, the payment of the commutation money, as therein specified, shall entitle the appellee to an acquittance and discharge from the payment of *all taxes* due or to become due from said appellee in the year for which such payment shall be made under *any and all laws* of this State, except said Passenger Tax Act.

The words " all taxes " "under any and *all laws* of this State," are surely broad and comprehensive enough to include the laws of the State providing for and prescribing county taxation, while they are certainly so clear and explicit as to exclude any possibility of their ambiguity or any shadow of doubt as to their precise and unmistakable meaning. It would be impossible to find words which more clearly and indisputably express the deliberate intention of the Legislature to discharge the appellee from the payment of every description of tax, both county and state, authorized by any law of this State, except by said Passenger Tax Act.

But it is argued, with great earnestness and logical skill by counsel for the appellant, that the following words of section 3 of said Act; viz.: " Law imposing taxes upon the said Company " and " such taxes as the Legislature of this State may hereafter *impose* upon said Company," indicate that the intention of the Legislature which passed said Act was to limit the operation of said sections 1 and 2 strictly to an exemption and discharge from the payment only of those taxes which were designed exclusively for the support of the State government, and not for county purposes, and which were imposed solely under and by virtue of the provisions of section 2, chapter 7, p. 28, of the Amended Code, and of the Act of April 8, 1869, chap. 392, vol. 13 Del. Laws (Amended Code, p. 41).

The fallacy of this argument is in assuming that the laws of this State, providing for county taxation, are not laws imposing

taxes. By reference to those laws it will be found that it is made compulsory upon the county assessors to assess the real and personal property in the county which, under said Section 1 of Chapter 11, Amended Code, p. 84, shall be liable to taxation and assessment for public purposes; and also compulsory upon the Levy Court in each county to lay road, poor and county taxes, upon said assess- ments in every year, and cause the same to be collected by the county collectors, who are in their turn compelled to perform that duty.

Under these provisions of law the duty to collect taxes for the support of the county government in every year is as imperatively and directly imposed upon the said county officials as is the duty upon the State treasurer under the provisions of any statute of this State, requiring him to collect taxes designed exclusively for the support of the State government.

And the taxes are none the less imposed by law, because in the former case the amount and rate thereof are required by law to be collected and laid by the Levy Court, while in the latter this is done by the law-making power and specified in the Act prescribing the tax. In either case the tax is " imposed " by law, and in both it is for a public purpose. And, moreover, in both it is a " State " tax, in the sense that it can be imposed by no other authority, and is to be used for the public benefit, whether through the general government of the State, or through the county governments which are State agencies established for the more convenient govern- ment of its people. *Camden etc. R. R. Co. v. Coms.*, 3 Harr., (N. J.) 72.

This interpretation of the word " imposed " as employed in the Act under consideration is certainly a fair, reasonable and natural one. But even if it be also susceptible of the construction claimed by the appellant, and could be interpreted to mean a tax whose rate is fixed by the Legislature and expressly specified in the Act providing for said tax, what would be the result? Simply that this particular language of Section 3 of the Act would be am- biguous or susceptible of two constructions; whereupon, the inquiry would arise, which of these two meanings shall prevail.

It is an established rule that where any cause of doubt arises, although apparently the doubt attaches only to a particular clause,

the whole statute is to be taken together and to be examined to arrive at the legislative intent; the different parts reflect light upon each other, and, if possible, such a construction is to be made as will avoid any contradiction or inconsistency ; and it is the duty of the courts, as far as practicable, so to reconcile the different provisions as to make the whole Act consistent and harmonious. If this becomes impossible, then we are to give effect to what was manifestly the intention of the Legislature, although by so doing we may restrict the meaning or application of general words. Sedg. Stat. Const. Law, 238.

According to this rule the language of section 3 must be construed in connection with the provisions of sections 1 and 2, in such a way as will, if possible, avoid any contradiction or inconsistency, and so reconcile the different provisions as to make the whole Act consistent and harmonious.

The rejection of the restricted meaning of "imposed" as claimed by the appellant, and the adoption of the other broader and more reasonable one above mentioned, will alone secure this result.

The words of sections 1 and 2 are clear, comprehensive and unambiguous, and, standing alone and without section 3, would, beyond doubt, expressly exempt the appellee from payment of the said county tax upon its said road bed. This much was substantially conceded by the appellant at the argument. But if the meaning of "imposed" contended for by the appellant is to prevail instead of the other broader and more reasonable meaning, then his proposition amounts to this : that an unambiguous section of an Act is to yield to and be controlled by an ambiguous one, and that a reasonable meaning of which the ambiguous provision is susceptible, and which will make the whole Act consistent and harmonious must be rejected, and another meaning adopted which will produce the contrary result. Such a proposition cannot be maintained.

It must be remembered that the provisions of the Act which provide for the exemption and discharge of the appellee from the payment of "all taxes under any and all laws of this State," as prescribed therein, are to be found exclusively in sections 1 and 2 thereof, while section 3 is merely a saving provision against the former sections, to prevent their said provisions from operating as

more than an annual suspension of any existing law imposing taxes upon the appellee, and from being construed into a contract exempting the said appellee from additional taxation by the Legislature in the future.

If the provisions of sections 1 and 2 had expressly provided that the said discharge should be from all " state and county " taxes, and in those very words, with the language of section 3 being as it now stands, it could not be maintained that the laws regarding the assessment and collection of county taxes against the real property of the appellee would not be within the saving provisions of said section 3, nothwithstanding the use of said word " imposed." Yet, if the restricted meaning contended for by the appellant should be given to the word, then said saving clauses would not, in such case, embrace any existing or future laws providing for county taxation.

If, therefore, the Act of 1873 is, as the foregoing consideration of it is believed to have demonstrated, clear, explicit and devoid of ambiguity or doubt in respect to the exemption and discharge from the payment of the said county tax on the said road bed of the appellee, then there is no ground upon which the appellant can seek a construction contrary to or outside of the express language thereof.

In the construction of statutes it is a rule of general application that effect must be given to the words used by the Legislature, if there is no uncertainty or ambiguity in their meaning. It is true that exemptions to individuals, from the common burdens laid upon citizens by the necessities of government, are not favored by the courts and are generally strictly construed, and that the courts have therefore required an exemption from taxation to be, beyond any reasonable doubt, within the intention of the Legislature, or they have declined to enforce it. And this intention must be manifested by the Legislature in plain and explicit language, concerning which there can be no misunderstanding.

These stringent requirements are more especially applicable to cases in which exemptions from taxation, or the surrender of the taxing power, are embodied in the charters of private corporations. The present is not a case of a surrender of the taxing power, nor strictly of an exemption from taxation, but rather of a release from

taxation in consideration of a specified sum paid in lieu thereof from year to year until the Legislature shall otherwise direct; so that the special reason for the foregoing stringent rule does not exist in the present case; and yet, in its clear, explicit, indubitable language and meaning, this Act so completely conforms to the most exacting requirements of the rule that it absolutely precludes the appellant from seeking a construction of its terms or the intention of the Legislature outside of the language of the Act itself.

The objection that the operation of the Act, under the foregoing construction of it, will bring embarrassment and inconvenience to the county officials in their administration of the county tax laws, and deprive the county of a source of revenue and thus increase the burdens upon other property owners, cannot avail against the clear intent and express letter of the law. This result is within the discretion and power of the Legislature; 18 Wall., 225 [85 U. S. bk. 21, L. ed. 894]; if intentional, and if unforeseen, as is often the case, or unintentional, it may be remedied by legislative, but not by judicial, intervention.

The cases in 17 Grattan, 181; 32 Iowa, 429; 91 N. Y., 584, and in other reports, cited by the appellant to show that the words "all taxes under any and all laws of this State" might be construed and restricted to mean only State and not county taxation, are not applicable as controlling precedents in the present case. In none of them was the language so comprehensive, explicit and indubitable as that used in this Act. In all of them there were peculiar features, and especial reasons for the conclusions therein reached, not existing in the present instance; and in some of them there was found (as is not so in this case) internal evidence in the Acts in controversy, indicating a legislative intent not to include the tax, the exemption from which was in question; while in most, if not all, of them, exemption from municipal taxation only was involved, which question is not now before this court for adjudication.

The claim of the appellant that the "Joint Resolution relating to certain taxes" adopted at Dover, April 19, 1883, 17 Del. Laws, 562, is "in pari materia" with the said Act of 1873, and therefore "operates as a legislative authority and command fixing and determining the status of the appellee as to the extent of its exemption

with respect to taxes levied after the adoption of that resolution," is unfounded in fact.

The resolution itself affords internal evidence that it does not affect the taxation or exemption of the appellee; but, on the contrary, only of other companies. Again; the resolution refers exclusively to such companies as were in arrears for taxes due the State at the time of its adoption; while it appears by the record in this case that the appellee was not in arrears therefor at that time.

It may be true that the Act of 1873 exempted the appellee from the payment of both county and State taxes, upon the payment of the specified commutation as prescribed therein, while the said Resolution, and other commutation Acts, may exempt all other companies only from State taxation. But since the legislative power to create this discrimination and inequality is indisputable, it affords no valid objection to the Act of 1873, if its terms and meaning clearly and unmistakably manifest a legislative intent to exempt or discharge the appellee from the payment of both county and State taxes, as it has been shown they do, beyond any reasonable doubt. *People v. Davenport*, 91 N. Y., 589.

It cannot be conceded that the construction which is given to this Act necessarily leads to an absurdity, or manifest injustice. It is possible to conceive of many reasons which would be sufficient to induce the Legislature, in consideration of a certain adequate sum paid into the State treasury annually, to release and discharge the appellee from the payment of all taxes, both county and State, from year to year, until otherwise directed by the Legislature, even though in doing so it discriminated against other companies. It is not necessary to enumerate these reasons, or any of them. That in the legislative judgment, this course has been adopted as a wise and beneficial policy for the State, and that such legislative purpose has been " manifested in plain and explicit language concerning which there can be no misunderstanding," is enough. That it has been so manifested in the Act now in question seems incontrovertible.

The conclusion, therefore, follows that the decree of the Chancellor, in so far as it perpetually restrains and enjoins the collection by the appellant of the said sum of $271.41, rated and apportioned

upon the valuation of the road bed or right of way of the appellee for the purposes of county taxation, should be affirmed.

If this interpretation of the Act of 1873 shall result in hardship or inconvenience to any, or in confusion or other embarrassment in the administration of the laws enacted for the purposes of county taxation, relief may be had by immediate application to the General Assembly now in session, the Legislature of 1873 having wisely and expressly reserved the power to modify or repeal the provisions of said Act at any time.

COMEGYS, C. J., dissented.